L. C. ROUNDTREE v. THE CITY OF GALVESTON.

1. ABSENCE OF STATEMENT OF FACTS ON APPEAL. Where there is no statement of facts the court will consider such assignments of error as relate to the sufficiency of the petition to warrant the judgment.

2. BILL OF EXCEPTIONS. A bill of exceptions serves to perpetuate in the record the ruling of the court to which the party presenting it excepts;

it cannot supply a statement of facts, however full its recital of facts may be.

3. CONSTRUCTION OF A CLAUSE IN THE CHARTER OF THE CITY OF GALVESTON. The general authority in the charter to the City Council to grade, shell, repair, pave or otherwise improve any avenue, street or alley, or any portion thereof, whenever, by a vote of two-thirds of the aldermen present, they may deem such improvement for the public interest, etc., and limited by a proviso that not more than two thoroughfares within certain designated limits shall be paved otherwise than with shells, within any period of two years, extends to the right of the city to improve any of the streets *with shells,* when deemed, by two-thirds of the aldermen present, for the public interest, and to impose two-thirds of the expense upon the adjoining property holders.

4. CONSTRUCTIVE REPEAL. Nor is such power given to the city limited or repealed by the Act of December 2, 1871, authorizing the city "to is- " sue bonds for its overdue debt, to improve its streets by grading, shell- " ing, paving and repairing the same, and building culverts, break- " waters," etc., etc.; this act purports to be a grant of power to the city, and not a limitation or restriction upon its existing powers.

5. TAXES FOR LOCAL IMPROVEMENTS. The authority for making assessment for local improvements is derivable from, and an exercise of, the taxing power and not that of eminent domain.

6. CONSTITUTIONAL PROVISIONS AS TO TAXATION. It is clearly settled by the great weight of authority, that the Constitutional provisions having reference to taxes for general revenue, that they shall be equal and uniform, etc., are not applicable to assessments for local improvements; and held that suit could be maintained by the city, for the assessment for local improvement against the adjoining lot owner, of one-third of the costs of such improvement.

APPEAL from Galveston.    Tried below before the Hon. A. P. McCormick.

The suit was filed May 24, 1873, by the city of Galveston, against L. C. Roundtree, and plaintiff's pleadings allege, that the city of Galveston is a body politic and corporate, under and by virtue of a law of the State of Texas, commonly known as the " Galveston City Charter." (See Charter, which is a public Act, passed and approved May 16, 1871.) That the defendant owned lot 8, in block 203, worth fifteen thousand dollars, and lying and being situate within the corporate limits of the city of Galveston, and fronting and abutting upon Tre-

mont, or Twenty-third street.   That this lot was liable, under
and by virtue of the city charter, and the ordinances passed
thereunder by the City Council, to be assessed for one-third of
the cost of improving that portion of the said street, which
fronts, adjoins, and is opposite to the said lot (not counting the
intersections of streets which is paid for by the city alone).
That the said street, including that portion which fronts, ad-
joins, and is opposite to the said lot, was improved by being
"shelled" by the city of Galveston, which improvement was
finished and completed by the city on the 19th day of July,
1872.   That on the — day of July, 1872, the sum of two hun-
dred and eight dollars and fifty-four cents was regularly and
legally assessed against the said lot; the said assessment being
one-third of the cost of improving by "shelling" that portion
of the said street which fronts, adjoins, and is opposite to the
said lot.   That the said assessment was to be paid in five equal
annual installments; the first of which was due and payable
upon the completion of the said improvement, and the others
were due and payable annually thereafter, with interest from
date of assessment till paid, at the rate of ten per centum per
annum.   (Rate of interest fixed by ordinance.)

That the plaintiff had, by virtue of the said charter, ordi-
nance, and assessment, a lien upon the said lot to secure the
payment of the said assessment, and each installment thereof,
as they became due.   That one-fifth of said installment—to
wit, forty-one dollars and seventy cents—was due and payable
on the 19th day of July, 1872 (the date of the completion of
the said improvement), the defendant's failure and refusal to
pay, which necessitated the institution of the suit.   The or-
dinance authorizing and prescribing the manner of making
this improvement was pleaded and set forth in full.


The charter of the city of Galveston, Title 9, Article 1, Sec-
tion 1, is as follows :

"The City Council shall be invested with full power and

" authority to grade, shell, repair, pave, or otherwise improve,
" any avenue, street or alley, or any portion thereof, within
" the limits of said city, whenever, by a vote of two-thirds of
" the aldermen present, they may deem such improvement
" for the public interest ; provided the City Council pay one-
" third and the owners of the property two-thirds thereof, ex-
" cept the intersection of the streets, from lot to lot, across the
" streets either way, shall be paid for by the city alone ; pro-
" vided that not more than two thoroughfares extending from
." Fifteenth to Thirty-fifth streets, and north to the south line
" of Avenue D, otherwise known as Market street, and none
" other shall be paved otherwise than with shells, within any
" period of five years; and the cost of two-thirds of said two
" thoroughfares shall be paid through the issue of bonds of the
" city, bearing interest, as in this charter provided for other
" bonds, and having five or more years to run ; and said cost
" shall be assessed on the property fronting on said thorough-
" fares, to be collected in equal annual payments, not less than
" five in number, and all moneys collected from these assess-
" ments shall be appropriated exclusively to the payment of
" the bonds issued for the payment of the cost of said pave-
" ment ;" and

ARTICLE II., SAME TITLE.

" Section 1. That whenever the City Council shall deter-
" mine to make any such improvement, they shall cause an
" estimate to be made of the probable cost thereof, by the
" Street Commissioner, or by some other officer of the city, or
" by a committee of aldermen ; and such officer or committee
" shall also report a full list of all lots, or fractional lots, giving
" number and size of the same, and the number of the block
" in which it is situated, and the names of the owners thereof,
" if known, and such other information as may be required
" by the City Council ; and if there be any lot, or fractional
" lot, the owner of which is not known, the same shall be en-
" tered on said list as unknown.    It shall be the duty of the
" officer or committee aforesaid, to enter on said list, opposite

"each lot, or fractional lot, lying and being on each side of
"the street, avenue, or alley, so to be improved as aforesaid,
"one-third of the estimated expense for such work or improve-
"ment on such avenue, street or alley, fronting, adjoining or
"opposite such lot or fractional lot, and on the acceptance and
"approval of said report and list by the City Council, said
"amounts shall be imposed, levied, and assessed as taxes, and
"shall be a lien upon the property until the payment of the
"same.

"ARTICLE III.

"Section 1. That after such action on the part of the City
"Council, as above provided for, such officer or committee
"shall give notice, as required by ordinance, of said tax being
"due, and within what time payable, and shall commence forth-
"with to collect the same. That after the expiration of the
"period for the payment of the tax, said officer or committee
"shall levy on so much property on said list on which said tax
"has not been paid, as will be sufficient to pay the same, and
"the same notice of sale as is required in sales for other taxes
"shall be given ; and if the tax is not paid before the day of
"sale, said officer, or committee, shall sell said property in the
"manner, and under the circumstances, and to the same ex-
"tent, and subject to the same conditions which are, or may
"be provided by ordinance for the sale of real estate in the
"city of Galveston, charged with the payment of taxes imposed
"by said Corporation ; and said officer or committee shall exe-
"cute a deed to the purchaser, at any such sale, and all the pro-
"visions of this Act, in reference to a deed drawn by the
"collector for taxes, shall apply to the deed provided for in
'this section.

"ARTICLE IV.

"Section 1. That in addition to the power and authority
"granted to the City Council to collect said assessments of
"taxes, as aforesaid, they shall have the further and additional
"remedy of instituting suit in the corporate name in any court
"having jurisdiction, for the recovery against any owner of

" said property, for the amount due for any such work so made
" as aforeaaid ; and the City Council shall provide by resolu-
" tion or ordinance, under the provisions of this Act, for carry-
" ing out and executing the powers in this title conferred, and
" may adopt such resolutions and enact such ordinances, and
" make such rules and regulations as they may deem neces-
" sary."

The special Act of the Legislature was pleaded in defense, and
insisted on as providing for the payment of bonds issued for
improving the streets by shelling, by a percentage of the general
revenue and not by assessment.

The Act is as follows:

### " CHAPTER 166.

" *An Act to authorize the city of Galveston to issue and nego-*
" *tiate the bonds of the city of Galveston, for the purpose of pay-*
' *ing the overdue debt of said city, and to improve the streets*
" *of said city by grading, shelling, paving, and repairing the*
" *same, and building culverts and breakwaters, and to create*
" *a fund to pay the interest and principal of said bonds.*

" *Be it enacted by the Legislature of the State of Texas,*
" That the City Council of the city of Galveston be, and is here-
" by authorized to issue and negotiate the bonds of said city, to
" such extent as may be necessary to pay the overdue debt of
" said city, and also the bonds of said city, for the purpose of
" improving the streets of said city, by grading, shelling, pav-
" ing, and repairing the same, and building culverts and break-
" waters.

" Section 2. Be it further enacted, that upon the negotiation
" of any of the bonds authorized in the first section of this Act,
" whether for the payment of the debt or for street improve-
" ments, the City Council shall create a separate fund for each
" class of said bonds by setting apart a percentage of the gen-
" eral revenues of said city from taxation, as a special fund for
" the payment of the principal and interest of said bonds, which
" percentage shall remain appropriated until all said bonds are

" paid off, and the fund derived from said percentage shall be
" drawn out solely for the purpose of paying the coupons of
" the particular bonds for which it is provided, and the princi-
" pal thereof when due.

" Section 3. Be it further enacted, that the City Council of
" the city of Galveston shall provide, by ordinance, for the
" issuance of said bonds, and direct the mode and time, and the
" rate and manner of the payment of interest, and make such
" other regulations as may be necessary to give effect to this Act.

" Section 4. Be it further enacted, that bonds for the pay-
" ment of the overdue debt of said city, may be issued and ne-
" gotiated under this Act, to the extent of one hundred and
" fifty thousand dollars, and bonds for the improvement of the
" streets of said city, to the extent of three hundred and fifty
" thousand dollars, as they may be needed.

" Section 5. Be it further enacted, that this Act take effect
" and be in force from and after its passage. Approved De-
" cember, 2, 1871."

*Ed. T. Austin* and *Flournoy, Sherwood & Scott*, for appel-
lant. The court erred in refusing defendant's testimony to
show that the shelling was no improvement to his property,
but an injury.

(Tide-water Co. *v.* Costar, New Jersey, 3 C. E. Green, 528;
36 New Jersey, 56; 1 Wendell, 322, People *v.* Brooklyn;
11 Wendell, 154, Canal Street; 16 Penn. State, 146, Ham-
mett *v.* Phila.; 8 Bush. Ky., 508, Baptist Church *v.* McAtee;
4 Bush. Ky., 466; 20 La. An., 497.)

The court erred in ruling that a tax could be levied in the
State of Texas by authority of the Legislature, otherwise than
in proportion to value, and not equal and uniform throughout
the State.

Defendant admits that many decisions have been made in
States that appear to sustain the ruling of the court on this
point, but he submits that in all these States provisions will be
found in their Constitutions relative to the powers to be given

or withheld from cities and towns.    (Alabama, Section 36, Article 4; Section 1, Article 12; Arkansas, Section 46, 47, and 49, Article 5; California, Sections 31 and 37, Article 4; Florida, Sections 17 and 22, Article 4; Georgia, Section 28, Article 1; Illinois, Section 9, Article 9; Iowa, Section 30, Article 3; Kansas, Section 5, Article 12; Maryland, Section 48, Article 3; Michigan, Section 38, Article 4; Missouri, Sections 5, 8, and 14, Article 11; Nevada, Section 8; Article 8; North Carolina, Section 7, Article 7; New York, Section 1, Article 8, Section 9, Article 8; Ohio, Section 6, Article 13; Oregon, Section 5, Article 11; South Carolina, Sections 8 and 9, Article 9; Tennessee, Section 29, Article 2; Virginia, Section 20, Article 6; West Virginia, Section 9, Article 10; Wisconsin, Section 3, Article 11.)

The Constitution of Michigan gives power to Legislature to incorporate cities and towns, and to confer on them such legislative powers as it deemed necessary.    (Dillon, Section 145.) Other States, as appears from the same authority, have similar provisions in their Constitutions—that of Kentucky, Ohio, and Louisiana.    But in the Constitution of the State of Texas not one word is said about giving other powers to corporate municipal bodies than the Legislature itself can exercise within the limits of the State.    The School Boards may have such legislative powers conferred on them as the Legislature may deem necessary, but not cities and towns.    The wording of the restrictive clauses of our Constitution covers the whole limit of the State to its fullest extent.    Section 19, Article 12, says: "All property in the State shall be taxed in proportion to its value, to be ascertained as directed by law;" and further, "taxation shall be equal and uniform throughout the State."

Now, defendant submits that under this rule the Legislature cannot levy special taxes on property, by size or quality, not having regard to value, nor, unless authorized by some other provision of the Constitution, can they authorize a creature of their own creation to do what they are forbidden to do themselves.    (41 Georgia, 21; 45 Alabama, 310.)

If the court will examine the Constitution they will find no such provision, and the only places where cities are mentioned is the second clause of Article 5, and Section 25 of Article 12.

If the nineteenth Section of Article 12 means what it says, it applies in the State as well within the limits of cities and towns as outside of them. The city is only a creature of the Legislature, and can it be given by its creator greater powers than the creator is authorized to exercise itself? The decisions in other States can have no effect on this, unless it is shown that the Constitutions under which they were made were like ours in this particular, that the power of the Legislature over the subject of taxation is the same in the city as it is in the country, unless the Constitution makes a different rule.

Where the Legislature have granted a charter to a city in this State, prior to the late war, with powers not strictly authorized by the Constitution, before taking effect to change the general law, it was submitted to the people, and if accepted by them they became parties to it, and consented to the provisions which, without their consent, would have been contrary to the bill of rights and the clauses and articles on the subject of taxation. (Paschal's Digest, Articles 5280, 5251, 5252.)

This very charter, which is claimed to be superior in power to the Legislature itself, was so submitted to the people by the Legislature of 1866, which had not been imbued with the doctrine that unlimited powers in localities within the State, contrary to the provisions of the Constitution, could be imposed on the people without their consent, and when the people examined the charter and saw the enormity of powers granted, they voted it down by an overwhelming majority. (The charter is set out in Special Laws of 1866, page 307, Section 107.)

The Legislature of 1871, under the present Constitution, imposed it on the people, with enlarged powers, and, without their consent, it became a law, and took effect from and. after its passage, and was declared a public law.

The citizens of Galveston, therefore, cannot be construed to be parties to this charter, and so bound by its provisions. They

expressed their decided dissent when granted the opportunity, and accepted it, as the whole people accepted reconstruction, because they could not help themselves. (30 Texas, 604; Paschal's Digest, 5280, 5251, 5252.)

And defendant submits that, being a public law, and passed by the Legislature under a Constitution that covers the citizens of Texas within its limits with its *ægis*, it cannot, contrary to the provisions of the Constitution, levy and impose taxes, otherwise than in proportion to value, and equal and uniform in its operation on all the citizens throughout the State.

It is contended that the Legislature's powers are only restricted by the Constitution, and that it has all powers of government not restricted by the Constitution; then, by the bill of rights and general provisions, the power to apply a citizen's property for a public use, without his consent, without just compensation, is withheld from the general powers of government, and any law authorizing taxation otherwise than in proportion to value, and equal and uniform in the limits of Texas, whether in city or country, is void, "and all laws contrary to "the following provisions shall be void (Section 23, bill of "rights), and these assessments claimed in this suit are to be "imposed, levied, and assessed as taxes." (Constitution, Section 9, Article 12. See also Section 32, Article 12.)

  *    *    *   In this charter, where strict provision to avoid debt is made, and bonds for this work are restricted to the amount required for two streets paved otherwise than with shells. In July, 1871, the City Council start this work, to be paid for in bonds, which are only authorized to be issued to pay for the two thoroughfares to be paved "otherwise than "with shells," and prosecute their work to completion without assessments. Is there any power in the charter to borrow money and issue bonds, and make a debt on the city for this work? Search it through, and not one scrap or sign of such right is given; the contract to pay in bonds for this work was *ultra vires* and void. (Mayor *v.* Ray, U. S. Supreme Court, 19 Wallace, 468.)

For construction of power to issue bonds, see Section 2, Title 4, Special Laws 1866, page 319; and Section 2, Article 3, of Title 4, present Charter, and see Article 29, page 43, present Charter.

This brings us to our fifth ground of defense: The special act of the Legislature, approved December 2, 1871, and long after this pretended ordinance was passed and approved, July 5, 1871.

The matter being in this condition, and bonds to be issued in accordance with the ordinance being valueless, application was made to the Legislature for the passage of a special law authorizing the issue of bonds for improving the streets, by grading, shelling, paving and repairing the same, the bonds to be provided for by a percentage of the general revenue.

The act so passed was drawn by the writer, and is copied in full in this brief. Defendant's plea, of this different mode for paving the streets with shells and paying for it with bonds, made a charge on the general revenue, instead of a burden on the property (as in the bonds authorized in the second proviso to the first article of title ninth), was ruled out by the court.

Now defendant submits that, as the Council disregarded the charter in creating this debt and in trying to impose it on the property, that the act of the Legislature was necessary to issue the bonds to pay for this work, and that the Council having paid for it in these bonds, which are by the very terms of their issue to be paid out of the general revenue, the Council have no power to levy the cost also, on the particular property; as it is now (following defendant's construction of the situation), this work was done *ultra vires*, and is now paid for by the whole city, and the general fund charged with its cost by the law authorizing the issue, and the Council have no power over it.

*Walter L. Mann*, for appellee.

MOORE, J. This suit was brought by the city of Galveston

to recover from L. C. Roundtree, the appellant, one-fifth of the amount assessed upon a lot owned by him on Twenty-second street, in said city, for cost of improving the same, by shelling. Said amount being for one installment on said assessment for the payment of which appellee claims a lien on said lot.

As there is no statement of facts in the record, we can consider only such of the errors assigned as relate to the action of the court in overruling the exceptions to the petition, or as brings in question its sufficiency to warrant the judgment.

There is in the record a bill of exceptions, which seems to have been intended by appellant, and which no doubt he supposed would serve, as a statement of facts, as well as a bill of exceptions. Evidently, however, it can not be so treated or considered. In the first place, it does not distinctly purport or state that it contains all the evidence adduced on the trial of the cause. But if it did, the objection to it would not be obviated.

A bill of exceptions and statement of facts are alike intended to be incorporated into and become parts of the record of the case. Still they are altogether different in their character and purposes, as well as in the manner of their preparation and authentication. The first serves to perpetuate in the record the ruling of the court to which the party presenting the bill excepts. Only such facts are set out in it, as are necessary for the proper understanding of the action of the court to which the exception is taken. In its preparation and completion the opposite party has no necessary connection, and is frequently not even cognizant of its contents until it has become a part of the record. While the latter is intended to embody in the record all the evidence introduced on the trial, as agreed to by the parties and approved by the court; or if the parties fail to agree, as certified to by the court after examining the statements prepared by them respectively.

In our liberal practice, discarding mere matters of form, the statement of facts may be made to serve the purpose also of a bill of exceptions; for the reason that it bears upon its face the

concurrent assent of the parties and the court.    But as this is not necessarily the case with a bill of exceptions, and as it does not ordinarily purport to be authenticated in the manner requisite for the authenticity of a statement of facts, it cannot be so regarded.

We are led to make these comments to guard, in other cases, against a similar mistake.    It is an oversight into which counsel have fallen, no doubt, by reason of the liberality and freedom in our practice and procedure in respect to mere matters of form.

It is claimed by appellant that the charter of the city of Galveston does not authorize any part of the cost of improving its streets with shells to be assessed on the property fronting on the street.    In support of this proposition it is said that it is only two-thirds of the cost of improving such streets as, under the charter, may be paved otherwise than with shells, which may be assessed against the property fronting on said street; while the cost of improving the streets by shells must, it is claimed, be defrayed by the city from its general revenue. We are of opinion, however, the plain language of the charter is a complete answer to this objection to the petition.    Authority is given by the charter to the city council, to grade, shell, repair, pave, or otherwise improve any avenue, street, or alley, or any portion thereof within the limits of the city, whenever, by a vote of two-thirds of the aldermen present, they may deem such improvement for the public interest, provided that the city pay one-third and the owners of the property two-thirds thereof, except the intersection of the streets, which is to be paid for by the city alone.    This general power of improving the streets is limited by a proviso that not more than two thoroughfares, within certain designated limits, shall be paved otherwise than with shells within any period of two years.    But this does not limit the authority given the city to improve any of the streets with shells when deemed, by two-thirds of the aldermen present, for the public interest, or alter the rule laid down in the charter, apportioning, between the

city and the owners of lots fronting on the street, the cost of improving it with shells. Nor do we think the power given by the charter to assess two-thirds of the cost of the improvements upon the owners of the lots taken from the city by the Act of December 2, 1871, authorizing the city " to issue bonds to pay " its overdue debt, to improve its streets by grading, shelling, " paving, and repairing the same, and building culverts, break- " waters," etc., etc. There is, so far as we can see, no necessary conflict in the provisions of the charter as to this matter and this statute. It purports to be a grant of power to the city, and not a limitation or restriction upon its existing powers.

It is also insisted by appellant that a tax cannot be levied by the Legislature, or under authority conferred by it, unless it is equal and uniform through the State or district to which it applies, and that it must be in proportion to the value of the property subject to the levy. The views of the court in regard to the constitutional provisions providing for and regulating the levy and assessment of *ad valorem* and other taxes for purposes of general revenue, have been fully expressed in cases recently decided, and need not be here repeated. That the authority for making assessments for local improvements is derivable from and in exercise of the taxing power, and not that of eminent domain, can not, we think, admit of question. (People *v.* Mayor, etc., of Brooklyn, 4 N. Y., 419.) If, then, this charge against appellant for one-third of the cost of improving the street on which his lot fronts is to be regarded as a property-tax within the meaning of the Constitution (Article 12, Section 19), it must be held invalid because it is not contemplated by the charter authorizing it, and, in fact, is not susceptible, under the ordinance by which it is made, of being assessed as a property-tax for general revenue as required to be by the Constitution. (Article 12, Section 28) We cannot hesitate to say, however, that it has been so frequently decided, that there can be no question that it is now clearly settled by the great weight of authority, that the constitutional provisions having reference

to taxes for general revenue are not applicable to assessments like this for local improvements. We are not prepared to dissent from the conclusions reached in the numerous cases in which it has been thus held, under similar constitutional provisions as with us, until stronger reasons and better authority for so doing than we have yet seen shall be shown us.

In discussing this subject it is said by Judge Cooley (Const. Lim., p. 497): " But, in addition to these cases, there are others " where taxes are levied directly on property, which are, never- " theless, held not to be within the constitutional provisions. " Assessments for the opening, making, improving or repairing " of streets, the draining of swamps, and the like local works, " have been generally made upon property with some reference " to the supposed benefits which the property would receive " therefrom."

" The Constitution of California requires," says Judge Dillon (Mun. Corps., Secs. 499, 501), " that taxation shall be equal " and uniform throughout the State," and that " all property in " the State shall be taxed in proportion to its value," still it is held that the word taxation, as here used, refers to the general taxes to defray the ordinary expenses of the State and its subordinate local governments, and not to assessments for local improvements. " That assessments, though a branch of the tax- " ing power, need not necessarily be exercised on the *ad* " *valorem* principle, but the Legislature is at liberty to adopt a " different basis of apportionment, such as frontage, benefits " received, or superficial contents." (Emory *v.* Cass Co., 28 Cal., 345.)

" So in Missouri, it is held that assessments against adjacent " owners for benefits received from opening, etc., of streets are " a valid exercise of the taxing power, and do not contravene " the provisions of the Constitution ' that all property subject " ' to taxation shall be taxed in proportion to its value.' " (Garret *v.* St. Louis, 25 Mo., 405.) Like decisions have been made in Louisiana, Kansas, and Kentucky, and in many of the other States. (See Dillon on Municipal Corporations, Sections

590--603, and numerous cases cited in the notes to these sections.)

The other objections to the petition are not deemed of sufficient importance to require any special notice.

Other questions of much interest have been discussed, which we are not authorized to consider in the absence of a statement of facts.

The judgment is affirmed.

Affirmed.