ALEXANDER ALLEN ET AL. V. THE CITY OF GALVESTON.

1. ASSESSMENT—CHARTER—CITY ORDINANCES.—Articles 1 and 2 of title 9 of the charter of the city of Galveston authorized the city council, among other things, to impose and assess a tax on each lot or fractional lot for one-third of the estimated expense of shelling the street fronting, adjoining, or opposite such lot or fractional lot. Under ordinances approved July 1, 1871, and April 2, 1872, an assessment was made for shelling Market street, by first ascertaining the expense of shelling the street opposite an entire block, and then assessing each lot in that block with one-third of its equal proportion of the entire expense, without regard to the actual estimated expense of shelling that portion of the street in front of the particular lot : *Held*—

    1. That the assessment was not of the character authorized by the charter.

    2. No power existed to make an assessment, except that which was derived from the charter.

    3. Whether the mode of assessing the property might have been less expensive to the tax-payer than if the charter power had been observed, is immaterial. The power to assess can only be exercised in the manner prescribed by the Legislature in the charter.

2. TAXATION—ASSESSMENT FOR LOCAL IMPROVEMENT.—The provisions of article 1 of title 6 of the Galveston city charter of 1876, and the tenth section of the act of August 19, 1876, "To enforce the collection of delinquent taxes on lands assessed since 1870," refer to ordinary taxation, and not to assessments for local improvements. Such assessments are not within the meaning of the word "taxation" as employed in our Constitutions and statutes, and its meaning cannot be enlarged so as to extend the power of sale conferred in cases of delinquent taxes, to delinquent back assessments.

3. CITY CHARTER—TAXATION—ASSESSMENT.—The collector of taxes for the city of Galveston was not authorized from October, 1873, to July 17, 1877, to sell for unpaid taxes property which had been assessed for street improvements fronting it. . During that period, the only method of forced collection recognized by ordinance was by suit.

4. TAXATION—TAX SALE.—Since the repeal of the Galveston city charter of 1871, the city council of Galveston has had no lawful authority to enforce tax assessments on city property, for improvement of contiguous streets, by levy and sale of the property by the city tax collector. A city ordinance adopted to accomplish such a result after the repeal of the charter of 1871, would be inefficient for that purpose.

APPEAL from Galveston.    Tried below before the Hon. William H. Stewart.

In view of the opinion, when read in connection with the briefs of counsel, it is deemed unnecessary to incorporate in the statement of the case the ordinances which receive construction.    They would fill several pages, and their import will be sufficiently understood from the opinion.

Title IX, "streets and alleys," of the charter of 1871, is as follows :

"ARTICLE I.—Section 1.    The city council shall be invested with full power and authority to grade, shell, repair, pave, or otherwise improve any avenue, street, or alley, or any portion thereof within the limits of said city, whenever, by a vote of two-thirds of the aldermen present, they may deem such improvement for the public interest; provided the city council pay one-third and the owners of the property two-thirds thereof, except the intersections of the streets, from lot to lot, across the streets either way, shall be paid for by the city alone; provided that not more than two thoroughfares extending from Fifteenth to Thirty-fifth street and north to the south line of Avenue D, otherwise known as Market street, and none other, shall be paved otherwise than with shells within any period of five years, and that the cost of two-thirds of such pavement of said two thoroughfares shall be paid through the issue of bonds of the city, bearing interest as in this charter

provided for other bonds and having five years or more to run, and said cost shall be assessed on the property fronting on said thoroughfares, to be collected in equal annual payments, not less than five in number; and all moneys collected from these assessments shall be appropriated exclusively to the payment of the bonds issued for the payment of the cost of said pavement.

"ARTICLE II.—Section 1. That whenever the city council shall determine to make any such improvement, they shall cause an estimate to be made of the probable cost thereof by the street commissioner, or by some other officer of the city, or by a committee of aldermen, and such officer or committee shall also report a full list of all lots or fractional lots, giving number and size of the same, and the number of the block in which situated, and the names of the owners thereof if known, and such other information as may be required by the city council, and if there be any lot or fractional lot the owner of which is not known, the same shall be entered on such list as unknown. It shall be the duty of the officer or committee aforesaid to enter on said list, opposite each lot or fractional lot lying and being on each side of the street, avenue, or alley so to be improved as aforesaid, one-third of the estimated expense for such work or improvement on such avenue, street, or alley fronting, adjoining, or opposite such lot or fractional lot, and on the acceptance and approval of said report and list by the city council said amounts shall be imposed, levied, and assessed as taxes, and shall be a lien upon the property until the payment of the same.

"ARTICLE III.—Section 1. That after such action on the part of the city council as above provided for, such officer or committee shall give notice as may be required by ordinance of said tax being due and within what time payable, and shall commence forthwith to collect the same. That after the expiration of the period for payment of said tax said officer or committee shall levy on so much of any property on said list on which said tax has not been paid as will be sufficient to

pay the same, and the same notice of sale as is required in sales for other taxes shall be given; and if said tax is not paid before the day of sale said officer or committee shall sell said property in the manner and under the circumstances and to the extent and subject to the same conditions which are or may be provided by ordinance for the sale of real estate in the city of Galveston charged with the payment of taxes imposed by said corporation, and said officer or committee shall execute a deed to the purchaser at any such sale, and all the provisions of this act in reference to a deed drawn by the collector of taxes shall apply to the deed provided for in this section.

"ARTICLE IV.—Section 1.   That in addition to the power and authority granted to the city council to collect said assessments of taxes as aforesaid, they shall have the further and additional remedy of instituting suit in the corporate name in any court having jurisdiction for the recovery, against any owner of said property, for the amount due for any such work so made as aforesaid; and the city council shall provide by resolution or ordinance, under the provisions of this act, for carrying out and executing the powers in the title conferred, and may adopt such resolutions and enact such ordinances and make such rules and regulations as they may deem necessary."

Title VI, " collection of taxes," is as follows:

"ARTICLE XIV.—Section 1.   That the foregoing provisions under head of Title VI, relating to notices, assessments, and collection of taxes on personal property, and all other provisions thereof not inconsistent with this section, shall also apply to real estate, but that no sales of real estate shall take place unless by decree of the District Court of Galveston county at some regular term thereof; and the city council may by ordinance enact the mode and manner in which suits for collection of taxes due and unpaid on land shall be instituted, and may have such other and further power regulating the proceedings necessary for the sale of the land as it thinks

best and is not inconsistent with the laws and Constitution of the State; provided that no sale shall be made until the owner has thirty days' notice thereof, which notice may be given actually by any officer of this city or by advertisement for sixty days, which advertisement may merely so describe the property as to designate it, and it shall not be necessary to set out the owner's name unless the same is known; and further provided that such owner, his agent or attorney, may redeem said property within two years from the day of sale by paying the purchaser or purchasers the full amount of his bid and costs of suit, with interest thereon at the rate of twelve per cent. per annum from day of sale; and further provided that the purchaser or purchasers may apply to the District Court at any time after said expiration of two years for confirmation of sale, and which said decree of confirmation shall vest full and absolute title in the purchaser or purchasers of said property, their heirs or assigns; and said District Court shall take and exercise all jurisdiction required to carry this into effect, and such ordinances as may be passed by the city council relative to the subject-matter."

*Ballinger, Jack & Mott,* for appellants.

I. To authorize an assessment for an improvement of the streets, such as shelling them, there must have been some intelligible, definite plan therefor, prescribed by the city council, and the cost therefor must have been estimated and the names of owners of lots reported in advance. Neither was done in this case.

The charter invests the city council with full power and authority to grade, shell, repair, pave, or otherwise improve any avenue, street, or part thereof, by a two-thirds vote of the aldermen present. (Title 9, art. 1.)

When such improvement was determined on, the council was to cause estimates to be made of the probable cost; a list of all lots or fractional lots on the street to be improved, with names of owners and proportion of the estimated expense to

each, were to be reported; and on the acceptance and approval of said report and list by the city council, said amounts were to be imposed and assessed as taxes on the property and to be a lien until payment. ( Art. 2, sec. 1.)

The ordinance of July 1, 1871, ordains the grading with a coating of sound clam shells, not less than fifteen inches in thickness, and to a proper grade, for a pavement of not less than six inches in thickness, of certain streets, not including Market street.

Nothing of the kind was done as to Market street.

The ordinance of April 2, 1872, provides that no street improvement, by grading, shelling, or paving, shall be undertaken until the city council has, by special resolution, defined the street or streets to be improved, also the particular kind of improvement to be made, whether by grading and shelling or paving.

The statement of facts admits the proceedings of the council and its officials to be correctly set forth. None other is alleged by the city; thus showing that no act of' the council ever determined on shelling Market street from Twenty-fifth to Thirty-third street; ever determined on the depth, extent, amount, or any other plan or mode of shelling; no estimate thereof was made in advance, no assessment based on such estimate, and no previous report of owners of lots. But upon a report that an amount of shells had been used, and the cost thereof, the assessment was then made and lot owners subsequently ascertained.

Strict construction of the power and proceedings. ( Cooley on Tax., 209, 215, note 2, 216, note 2, 418, 461, 464; Burr. on Tax., 371 *et seq.*, 471, 472; Dill. on Mun. Corp., secs. 606, note 3, 658.)

All prerequisites to be complied with. (Yenda *v.* Wheeler, 9 Tex., 408; Robson *v.* Osborn, 13 Tex., 298; Devine *v.* McCulloch, 15 Tex., 488; Wofford *v.* McKinna, 23 Tex., 36; Kelly *v.* Medlin, 26 Tex., 48; Davis *v.* Farnes, 26 Tex., 296; Clegg *v.* The State, 42 Tex., 605; Cooley, 464; Burr., 400,

477, 499; 2 Dill. on Mun. Corp., sec. 610, note 3; Sharp *v.* Speir, 4 Hill, 84; Petition of Cameron, 50 N. Y., 502; State *v.* Jersey City, 36 N. J. Law, 188; Covington *v.* Casey, 3 Bush, 698; Scovill *v.* Cleveland, 1 Ohio St., 131, 133; McComb *v.* Bell, 2 Minn., 307; Hewes *v.* Reed, 40 Cal., 255; Folz *v.* Cincinnati, 2 Handy, 261.)

Functions of council could not be delegated. (Dill. on Mun. Corp., secs. 60, 567, 618, 649, and notes; Thompson *v.* Schermerhorn, 6 N. Y., (2 Seld.,) 92; Hydes *v.* Joyes, 4 Bush, (Ky.,) 468; 34 N. J., 163; 18 Md., 300; 4 Cush., 438; 5 Cush., 272; 11 Cush., 436; 3 Story, 411; 34 N. J., 163; 50 Ill., 28; 43 Mo., 359; 13 Cal., 244.)

II. The city council of Galveston had no lawful authority, under the charter of 1871, to enforce these assessments by levy and sale by its tax collector, nor otherwise than by suit.

Section 1 of article 14 of title 6, "collection of taxes," provides: "No sales of real estate shall take place unless by decree of the District Court of Galveston county at some regular term thereof."

III. No authority to levy and sell for assessments prior to 1876, was conferred by the charter of 1876, nor exists otherwise by law. (Cooley on Tax., 40, 201, 209, 418, 324, and note 1, 221, note 2; Burr. on Tax., pp. 371, 372, 433, 434, 435, sec. 5, note 1, sec. 148.)

Laws or provisions relating to taxes do not apply to assessments for local improvements. (Roundtree *v.* Galveston, 42 Tex., 625; Austin *v.* Gulf, Colorado and Santa Fe Railroad Co., 45 Tex., 271; Cooley, 146–148, 418, 469; Burr., 3, 4, 435, 460, 461; 2 Dill. on Mun. Corp., sec. 617; Sharp *v.* Speir, 4 Hill, 76, 92; Paine *v.* Spratley, 5 Kan., 546; Norfolk *v.* Ellis, 26 Grat., 226.)

The charter of 1876 does not give power of sale for past local improvements. (Cooley, 40, 221, 300, 315, note 1, 324, note 1, 461, 469; Burr., 433, 435, sec. 148; Blackw., 518, 519; Sharp *v.* Speir, 4 Hill, 76; Ham *v.* Miller, 20 Iowa, 450; Mc-

Innery v. Reed, 23 Iowa, 410; Merriam v. Moody, 25 Iowa, 163; Paine v. Spratley, 5 Kan., 546.)

IV. The city charter of 1871 gave no authority to shell streets and make assessments therefor, payable in five annual payments, on which interest should be paid; and no such assessment was legal.

Section 1 of article 1, title 9, provides that the city may pave two thoroughfares within certain limits otherwise than with shells, within any period of five years, and pay for the same in bonds of the city, the cost to be assessed on the front property in at least five equal annual payments.

The provision as to shelling, by the charter, was simply that the cost of one-third of the estimated expense therefor should be assessed against the front lot, and imposed, levied, and assessed as taxes, and a lien upon the property until payment. (Sec. 1, art. 2, title 9.)

No authority was given to the city by the charter to issue bonds for shelling the streets; nor to apportion the cost therefor in annual assessments of five or any other number of years; nor to attach interest of ten per cent., or any other amount, to such assessments. (Cooley on Tax., p. 13, note 1, p. 300; Mayor v. Ray, 19 Wall., 468; Hitchcock v. City of Galveston, 2 Woods, 212; Id., 6 Otto, 341; Id., opinion of Judge Bradley, U. S. Circuit Court, Galveston, May, 1878; Union Pacific Railroad Co. v. Lincoln Co., 3 Dill., 302, 303; Burr. on Tax., 337; Thomas v. Port Huron, 27 Mich., 320; State v. Pettineli, 10 Nev., 147; Lucas v. San Francisco, 7 Cal., 473; Zottman v. San Francisco, 20 Cal., 102; Nicolson Paving Co. v. Painter, 35 Cal., 705.)

Could not impose interest on penalties. (Blackw., 195, 196, 250; City of Augusta v. Dunbar, 50 Ga., 394; 26 Vt., 482.)

Excess vitiates. (Lacey v. Davis, 4 Mich., 157; Case v. Dean, 16 Mich., 32, 33; Clarke v. Strickland, 2 Curtis, 444.)

V. The shelling of Market street was done and completed by the council under the act of the Legislature of Texas of

December 2, 1871, chapter 166, authorizing the city to issue and negotiate its bonds, among other things, for grading, shelling, paving, and repairing its streets, to the amount of $350,000, and paid for in said bonds, and the cost thereof in said bonds could not be subsequently assessed on the property owners.

On the 7th of December, 1872, the council directed the purchase of shells to be used for shelling Market street from Twelfth to Thirty-third, and that the above street improvement or shell bonds were appropriated to pay for same.

After the shelling had been done and paid for in said bonds, the street superintendent reported the cost, the engineer made the assessment therefor on the lots, and it was approved by the council.

The act of the Legislature of December 2, 1871, section 2, expressly provided for the payment of the bonds, principal and interest, by setting apart a percentage from the general revenues of said city from taxation, to remain unappropriated until all said bonds are paid off.

The statement is thus plain that there were two wholly distinct modes by which the city could shell its streets: First, under its charter, by making previous estimate and assessing it against the abutting lots; second, by doing the work and paying for it in bonds, issued under authority of the Legislature, at the general expense of the city. (Burr. on Tax., p. 471; Cooley on Tax., 221, 255, 256; Louisville v. Hyatt, 5 B. Monr., 202, 203; Folz v. Cincinnati, 2 Handy, (Ohio,) 261, and authorities cited.)

VI. The assessment authorized by the charter on each lot or fractional lot was for one-third of the estimated expense for the improvement on the street fronting, adjoining, or opposite such lot or fractional lot. The assessment made and enforced was for one-third of the cost of the improvement of the street in front of the entire block, in proportion to the frontage of lots or parts of lots therein, and the assessment was in violation of the charter and void. (Burr. on

Tex., pp. 471, 472; State *v.* Hudson, 5 Dutch., (N. J.,) 104; State *v.* Bergen, 5 Id., 266; Clapp *v.* Hartford, 35 Conn., 66; 2 Dill. on Mun. Corp., secs. 610, 620; 12 Wis., 562.)

VII. The sale was advertised and made, not on the assessments made by the city engineer and approved by the council, but on some arbitrary theory of the amount due, by the collector, which was unauthorized and void, leaving the amount due wholly indefinite and uncertain.

For example, the advertisement of sale was: "Peter Almeras, lot 1 in block 507; amount due $75.32, and all interest due."

The assessment by the city engineer against this lot was: Total amount, $94.17; due October 6, 1873, $18.83; October 6, 1874, $20.71; October 6, 1875, $22.59; October 6, 1876, $24.47; making $87.30, exclusive of the last installment, due October 6, 1877.

The advertisement was also for "all interest due." Interest due on what principal—from or to what date—at what rate of interest? Nowhere stated, nor any basis furnished, even of conjecture. The same as to all other lots. (Cooley on Tax., 336; Blackw., 250, note *a;* Clarke *v.* Strickland, 2 Curtis, 443.)

VIII. If the ordinance of July 17, 1877, should be held valid, there was no substantial compliance with its requirements by the collector, first, in giving to the owners thirty days' written notice that assessments were due and payable; second, in giving same notice of sale as is required in sales for taxes; third, making sale in the manner provided for the sale of real estate by the charter.

Section 96 of the charter provides that when real estate is sold, the smallest portion of ground, to be taken from the east side of the premises, shall be sold; provided any person will take the same and pay the taxes, costs, and fees.

The case shows that no such mode of sale was advertised. (Lockhart *v.* City of Houston, 45 Tex., 323, 324; Clegg *v.* The State, 42 Tex., 611; Cooley on Tax., 304, 305, 334, 335,

and references; Warner v. New York, 8 N. Y., 132; Blackw., 196, 197, 221.)

IX. If the act of the Legislature of August 19, 1876, to enforce the collection of delinquent taxes, &c., should be held to apply to assessments for local improvements previously made in towns and cities throughout the State, the provisions of the act were not observed, and advertisement and sale were void. No copy of delinquent list was posted for sixty days, in compliance with sections 2 and 4 of said act. No offer to the bidder who will pay the taxes, &c., for the least amount of said real estate, nor any designation of corner from which it should be taken. (Sec. 7, p. 257.)

No opportunity to point out property. (Yenda v. Wheeler, 9 Tex., 408; Pitts v. Booth, 15 Tex., 453; Cooley on Tax., 334, 335, note 1; Belden v. The State, 46 Tex., 103, and authorities above.)

X. That, as appears by said advertisement, sales are to be made for assessments on certain lots on Market street as follows: Block 505, lots 6 and 7, $148.72; block 567, lots 9 and 10, $150.08; block 572, lots 5 and 10, $288.96; block 565, lots 8 and 9, $148.72; block 566, lots 8 to 11, $298.80; block 566, lots 12, 13, and 14, $224.40; block 565, lots 12 and 13, $144.72. Whereas by said charter the assessment was required to be on each lot or fractional lot improved for its proportion of the estimated expense for such work or improvement on such street fronting or adjoining such lot or fractional lot, and said assessments are void, nor can any such sale be legally made. (Clegg v. The State, 42 Tex., 605; Cooley on Tax., 279, 280; Burr. on Tax., 212; 18 Cal., 149; 9 Ohio, 43; 33 Ind., 30.)

*R. V. Davidson,* for appellees.

I. The city council, in making the assessments herein complained of, complied with and acted in conformity to the charter of the city of Galveston of May, 1871; said assessment created a valid lien on the property of appellants;

that the sale by virtue of said assessments was legal, and
that said city has a valid legal title to said property, subject
only to appellants' right of redemption. (Charter of City of
Galveston of May 16, 1871, title 9, arts. 1-4; Cooley on Tax.,
464, note 4, and references; Burr. on Tax., 483; Sorchan v.
City of Brooklyn, 62 N. Y., 339; Howell v. City of Buffalo,
37 N. Y., 267; Eager v. City of New York, 46 N. Y., 100;
Schenley v. Commonwealth, 36 Penn., 56, 57; Steckert v.
City of East Saginaw, 22 Mich., 113.)

II. The city council of the city of Galveston has power,
under the charter of 1876, "to make all such rules and reg-
ulations" as they may deem necessary for the collection of
all taxes due and becoming due said city; the city council, in
pursuance of such authority, by ordinance, empowered the
collector to levy upon and sell the property to satisfy unpaid
assessments; also, by laws of the statute of 1876 the collector
was empowered to make such levy and sale. (Burr. on Tax.,
433, 434; Charter of 1871, title 9, art. 3, sec. 1; Charter of
1876, title 6, art. 1, sec. 88; City of St. Louis v. Russell, 9
Mo., 502; City of St. Louis v. Allen, 13 Mo., 412; Stats. of
1876, p. 258.)

III. The city charter of 1871 gave the city council power
to shell Market street, and therein gave said council author-
ity to make regulations for the payment and collection of
assessments due said city from appellants by virtue of such
shelling.

The city council had authority to fix the rate of interest on
such assessments, and did provide by ordinance that said
assessments should "bear interest at the rate of ten per cent.
per annum."

Section 1 of article 1; title 9 of the charter of 1871, invests
the city council with power to shell, grade, pave, or otherwise
improve any avenue, street, or alley.

Section 1 of article 4 of said title and charter empowered
the city council with authority to pass ordinances and resolu-
tions to carry out the power given in the above section; and

further empowered the city council to pass such ordinances and resolutions and make such regulations as said council might deem necessary.

The ordinance of April 2, 1872, provides that assessments for streets shall be payable in five annual installments, bearing interest at ten per cent. per annum.

IV. The city council, under the act of the Legislature of 1871, was empowered to issue bonds for improvements upon streets, and have power to collect assessments from persons whose property adjoined such improvements to pay for said bonds so issued. Such was the action of the city authorities in these assessments.

The ordinance of April 2, 1872, provided that two-thirds of the costs of improvements of streets shall be assessed against property immediately adjoining.

The resolution of the city council of December 7, 1872, provided for the issuance of "street improvement or shell bonds" to pay for the improvements of Market street, for the payment of which these assessments were made. (Charter of 1871, title 9, arts. 1, 2, 3, secs. 1; Burr. on Tax., 466; 49 Cal., 546.)

V. These assessments were equitably made on the several pieces of property on each side of the street improved, and are a substantial and sufficient compliance with the charter.

Should there be a failure to comply with the charter, and any assessments be improper or illegal, then, in order to maintain their proposition made herein, appellants must first offer to pay for the benefits actually received. (Charter of 1871, title 9; Burr. on Tax., 474; Morrison *v.* Hershire, 32 Iowa, 271.)

VI. The sale was advertised and made for the whole amounts due on the respective lots at the date of said sale, and was therefore legal and valid. (Dill. on Mun. Corp., sec. 290.)

VII. The notice and advertisement for sale of property for the collection of tax assessed were in pursuance of the act of

the Legislature of 1876, the provisions of which apply as well to the collectors of taxes of cities as to those of State and counties. (Stats. of 1876, pp. 258, 263.)

VIII. The deed of conveyance of property sold for taxes vests a good and perfect title in the purchaser of such property, and can only be impeached for actual fraud. (Const. of 1876, art. 8, sec. 13; Laws of 1876, pp. 255–259.)

IX. The property of appellants which was assessed and sold being property which fronted on the street improved, was especially benefited and enhanced in value by reason of such improvement; and it would be inequitable and unjust to burden the people at large with the whole tax for such improvement, which would be the effect of declaring the assessments void. (Burr. on Tax., pp. 465–467; Cooley on Tax., pp. 416, 417; Kirby *v.* Shaw, 19 Penn. St., 258; Litchfield *v.* Vernon, 41 N. Y., 123, 133; Lockwood *v.* St. Louis, 24 Mo., 20, 22.)

GOULD, ASSOCIATE JUSTICE.—This suit was brought by the appellants, twenty-seven in number, to obtain an injunction against a sale by the tax collector of the city of Galveston of lots and parts of lots fronting on Market street, for assessments thereon for shelling the street in front of the blocks containing said lots. The advertisement of the sale, all the sections of the charter, the ordinances of the council, and the proceedings of the officials under which said assessments were made, are set forth by exact copies thereof, and the authority to make the sale and the validity thereof are denied.

Preliminary injunction being refused, the petition was filed in court. The sales were made by the city collector, and the city of Galveston became the purchaser of all the lots offered for sale, bidding the amount of the tax and costs on each.

Defendants answered, first, by general demurrer; second, by general denial; third, by affirming the lawfulness and sufficiency of the assessment, proceedings, and sale, but suggesting no other act or proceeding than set out in the petition;

that the city had purchased the property at said sale and holds the lawful title thereto, subject only to the right of redemption of same, and denying all right to relief; fourth, that the property of the plaintiffs had been enhanced in value by the shelling done by the city, and that it was inequitable that the burden therefor should be imposed on the city at large. By supplemental petition, the sales were alleged, and prayer that they should be set aside and the sale and assessment declared void. Plaintiffs' demurrer to the third and fourth pleas was overruled. The cause was submitted to the court on an agreed statement of facts, as follows:

"For the purposes of the trial of this cause, it is admitted that the copies from the charter and ordinances of the city of Galveston, and from the proceedings of the council, and from the officials thereof, recited and set forth in the petition, the advertisement by F. R. Lubbock, tax collector, as copied in the petition, are correct and are evidence in the case; that sale was made by said tax collector on Tuesday, the 2d of October, 1877, as stated in the supplemental petition, and the property as advertised was all bid in by said Lubbock for the city of Galveston, for the amount of the tax claimed, interest and costs, and deeds made to the city therefor.

"That plaintiffs were respectively the owners of the property, as advertised, set opposite their names in exhibit No. 1.

"The charter and ordinances of the city, and any ordinances or proceedings of the city council bearing on the subject, may be added to the statement of facts and presented to the Supreme Court."

The court gave judgment for the defendants and dismissed the suit. Motion for new trial was overruled.

The questions presented are as to the validity of the assessments and of the sale of the lots by the tax collector of the city. The power and authority of the city council, under the charter of 1871, to shell Market or any other street of the city, and to assess two-thirds of the probable cost or estimated expense of such improvement on the lots fronting on said street, is not

questioned. (Roundtree *v.* City of Galveston, 42 Tex., 625.)
The position of appellants is, that the city council failed to
exercise this power in the manner prescribed by law, and that
for this reason no valid assessment has ever been made on
their respective lots. Their position is further, that if the
assessments were valid, the sale by the tax collector without
suit was unauthorized, and was otherwise irregular and in-
valid.

One objection to the assessment is embodied in the follow-
ing proposition, made in the brief of counsel for appellants:
"The assessment authorized by the charter on each lot or
fractional lot was for one-third of the estimated expense for
the improvement on the street fronting, adjoining, or oppo-
site such lot or fractional lot. The assessment made and
enforced was for one-third of the cost of the improvement
of the street in front of the entire block, in proportion to the
frontage of lots or parts of lots therein, and the assessment
was in violation of the charter and void."

The counter-proposition of counsel for appellees does not
deny this construction given to the charter, but merely asserts
in general terms that the assessments were "equitably made
on the several pieces of property on each side of the street
improved, and are a substantial and sufficient compliance
with the charter." Looking to the second article of the
charter, under the title "streets and alleys," we find that it
requires to be entered on the list of lots, with names of own-
ers, &c., "opposite each lot or fractional lot lying and being
on each side of the street, avenue, or alley so to be improved
as aforesaid, one-third of the estimated expense for such work
or improvement on such avenue, street, or alley fronting, ad-
joining, or opposite such lot or fractional lot."

The legislative intention seems to have been, to apportion
to each lot or fractional lot one-third of the probable cost or
estimated expense for shelling that part of the street opposite
such lot or fractional lot. This mode of assessment must be
assumed to have been adopted by the Legislature as substan-

tially apportioning the cost with reference to the benefit received. At best, and by any mode of assessment adopted, it is only practicable to approximate the relative benefit to each lot from the improvement, and in this case we cannot say that the mode of apportionment was otherwise than valid and proper. The power conferred on the council by the charter was certainly only to assess against each lot or fractional lot one-third of the expense, estimated or actual, of the shelling of that part of the street opposite that lot or fractional lot.

These grants of power to make local assessments are strictly construed, and must be strictly followed. (Cooley on Tax., pp. 418, 464; Burr. on Tax., pp. 436, 471, 472.)

It appears that the estimates of the cost were made for blocks, and not for each lot or fractional lot; that is, each lot is charged with its proportion of the expense of shelling the street opposite the block of which it forms a part, instead of the expense of shelling that part of the street in front of the lot itself. It is enough to invalidate it, that this is not the assessment authorized by the charter. It may be, in view of the comparatively uniform level of the streets of Galveston, that the difference would not be great. It may even be that the lots of plaintiffs have been assessed with less than they would have been had the directions of the Legislature been followed. The answer is, that the power conferred was to assess in one mode, and the power assumed by the council and officers of the city was to assess in another mode. No other power to make assessments existed in the council than such as was plainly conferred by the charter. The power to shell the streets and to assess two-thirds of the cost on the property owners, was undoubtedly vested in the council. By their action they were enabled to create a charge on the lots fronting on the street shelled. But until the steps prescribed by the charter are taken, there is no valid assessment.

Another proposition submitted by counsel for appellants is, that "no authority to levy and sell for assessments prior

to 1876, was conferred by the charter of 1876, nor exists otherwise by law."

On behalf of the city, the power of the tax collector to levy and sell is claimed under the charter of 1876; the tenth and cleventh sections of the act of August 19, 1876, "To enforce the collection of delinquent taxes on lands assessed since January, 1870"; and the amended ordinance of the city of July 17, 1877. The provisions of the charter and statute referred to, so far as material to be stated, are as follows:

Section 88 of article 1, title 6, "collection of taxes," gives the council "Power to provide by ordinance for the prompt collection of all taxes assessed, levied, and imposed by this act, or hereby authorized and due, or becoming due to the said city, and to that end may and shall have full power and authority to sell real as well as personal property, and may and shall make all such rules and regulations and ordain and pass all ordinances as they may deem necessary to the levying, laying, imposing, assessing, and collecting of any of the taxes herein provided." (Special Acts of 1876, p. 24.)

Section 165 vests in and authorizes to be prosecuted by the corporation thereby created all rights, actions, fines, penalties, and forfeitures, in suit or otherwise, accrued under the laws heretofore in force; and no suit pending is to be affected by the act, but is to be prosecuted or defended by the corporation.

Section 10 of the "Act to enforce the collection of delinquent taxes on lands assessed since January, 1870," (Acts of 1876, p. 258,) provides: "The provisions of this act in reference to the seizure and sale of real and personal property for taxes, penalties, and costs due thereon, shall apply to collectors of taxes for towns and cities, as for collectors of taxes for counties, and they shall be governed in selling real and personal property by the same rules and regulations in all respects as to time, place, manner and terms, and making deeds, as are provided for collectors of taxes for counties."

Section 20 of the "Act regulating the duties of tax collectors in reference to the seizure and sale of property of delin-

quent tax-payers, and to define the further duties, powers, qualifications, and liabilities of collectors of taxes, and to regulate their compensation," approved August 21, 1876, is literally the same as the preceding section.

These provisions seem to refer to ordinary taxation, and "not to assessments for local improvements." Such assessments are not within the meaning of the term "taxation" as "usually employed in our Constitutions and statutes." (Burr. on Tax., p. 435; Cooley on Tax., p. 446; Sharp *v.* Speir, 4 Hill, 76; Austin *v.* Gulf, Colorado and Santa Fe Railroad, 45 Tex., 271; Roundtree *v.* City of Galveston, 42 Tex., 626; Burr. on Tax., sec. 150, citing Paine *v.* Spratley, 5 Kan., 525; Leavenworth *v.* Laing, 6 Id., 274.)

Such being the ordinary meaning of the word "taxes," no sufficient reason is perceived for enlarging its meaning, in the charter or statute, so as to extend the power of sale conferred in cases of delinquent taxes, to delinquent local assessments. The strictness of construction applied to statutes granting such power, will not allow of this. (Burr. on Tax., pp. 433–435; Cooley on Tax., p. 461.)

If, however, the charter refers to assessments as well as taxes, it, by its terms, provides only for taxes "assessed, levied, and imposed by" that act, and would not include assessments under the former charter.

For these reasons, we are satisfied that the power to levy and sell without suit, if it existed, was derived, not from the charter of 1876 or the statute of that year, but from the charter of 1871. By the terms of that charter, (title 9, arts. 3, 4,) the power was granted to the city council to collect by levy and sale, or by suit; but the ordinances enacted by the council made no provision for such levy and sale. On the contrary, they directed that in all cases suit be brought. (See ordinance of April 2, 1872, sec. 3.)

We do not doubt that, under the charter of 1871, it was competent for the city council to direct that collections in cases of non-payment of assessments be made by suit, and

that, whilst section 3 of the ordinance of April, 1872, was in force, the collector was not authorized to proceed by levy and sale. It is evident from the terms of the charter that the levy and sale were to be made in pursuance of regulations to be prescribed by ordinance, and in the fourth article the power and authority to collect are spoken of as granted to the city council.

At the time these assessments were made, (October, 1873,) and subsequently up to the amended ordinance of 1877, the collector was not authorized to sell, because the ordinances of the city council directed collection by suit.

The repeal of the charter of 1871 preceded the amendment of the ordinance by which a levy and sale were attempted to be authorized. After that repeal, our opinion is that the power of the city council over the subject must be derived from the new charter, or from some provision therein by reason whereof the power continued notwithstanding the repeal of the charter granting it. We have been cited to no clause in the new charter sufficiently comprehensive to support such continuance of power in the city council, and in our opinion the ordinance of July, 1877, if designed to affect the remedy in cases where the assessment was made, and the delinquency occurred under the charter of 1871, was ineffectual for that purpose.

Other objections, both to the assessments and to the sale, have been urged; but it has not been deemed necessary to pass upon them. Because the assessment was not made in pursuance of the authority conferred, and because the sale as made was unauthorized, our opinion is that the judgment of the court below is erroneous. It is accordingly ordered that the judgment be reversed and the cause remanded.

REVERSED AND REMANDED.

This case was taken to Austin Term.. Opinion April 15,. 1879.