### Wm. M. Cook v. Antonio de la Garza.

It is not necessary for a Sheriff in whose hands an execution is placed against the property of a defendant whose residence is in another county, to go out of his county to seek the defendant to afford him an opportunity of pointing out property, or to ascertain whether he have an agent, or personal property in the county subject to execution, before he will be authorized to levy on the lands of the defendant in the county. But he must first exercise ordinary diligence in his county to ascertain whether the defendant has such agent or personal property therein; and, where he makes a levy on land, and the defendant applies for an injunction, it will be presumed that the Sheriff exercised proper diligence, unless the contrary be shown.

An excessive levy upon real property is not, of itself, a ground for granting an injunction.

*Quere*, where a defendant in execution applies for the equitable interposition of the Court to enjoin a sale of real property under execution, on the ground that he was not called on to point out property or that the levy should have been made upon his personal property, whether he will not be required to show that he has offered or is ready to place in the hands of the Sheriff personal property sufficient to satisfy the execution.

Where an affidavit is couched in such general terms as to include facts which the affiant could not know of his own personal knowledge, it may be discredited entirely.

Cook v. de la Garza.

Nothing is better settled or can be clearer on principle, than that, to entitle a par-
ty to a new trial after the Term, he must show sufficient matter to have entitled
him to a new trial if applied for at the Term, and a sufficient legal excuse for not
having then made his application.

As to that which a party might have known by the use of proper diligence, he is
held to the same legal responsibility, on a question as to diligence, in all re-
spects, as if he actually knew.

On the dissolution of an injunction restraining the collection of money from the
principal in the injunction bond, it is proper for the Court to render judgment
against the principal and his sureties for the principal sum enjoined, and for the
damages assessed.

Error from Victoria.    Action by plaintiff in error against
defendant in error.    Petition addressed to the Judge of the
third. Judicial District ; material allegations, that the de-
fendant having recovered a judgment against the plaintiff
and two others in Victoria county, for $600 and costs of suit,
had caused execution to be issued and levied on three tracts
of land in said county belonging to plaintiff of the value of
$10,000, each one of which tracts would bring more than
enough, at public sale, to satisfy the execution, that the levy
was oppressive, and that if said lands should be sold, &c.
Further, that at the date of the judgment and ever since " he
" has owned and had in the possession of his agent, William
" Beaumont, in said county of Victoria, a large amount of
" personal or moveable property, consisting of horses, mares
" and mules, of great value, and at the time of the levy afore-
" said there was in the hands of his aforesaid agent personal
" property of the value of $1200 or more; that neither he nor
" his agent was at any time ever called upon to designate or
" point out property as he had the right to do, upon which
" said execution might be levied, and had he or his agent been
" so called upon, he might have pointed out sufficient per-
" sonal property to satisfy said execution," &c.    Prayer for
injunction against the Sheriff, and citation to de la Garza to
appear at the next Term of the District Court in and for said
county of Victoria, to answer the petition ; that the injunction
be made perpetual, that the levy be quashed, and for general
relief.    The petition recited that the plaintiff was a citizen of

the county of Calhoun, at the time of filing the same. Sworn to 30th July, 1853, before R. E. B. Baylor, Judge, &c. Order, same date, by R. E. B. Baylor, Judge, &c., to the Clerk of the District Court of Victoria county to issue the injuction. Petition filed August 2nd, 1853. After the order for the injunction the transcript on appeal to this Court continued as follows:

Would represent that said defendant at the Fall Term, A. D. 1851, of the District Court in and for the county first aforesaid, recovered against your petitioner a judgment for the sum of six hundred dollars and costs, in a suit instituted to recover damages for alleged trespasses, committed by your petitioner in the year 1848 or 1849; that said suit was instituted against your petitioner and E. S. Harper, Henry Harper and George F. Harper, but before the trial thereof was discontinued as to the other defendants, and prosecuted against your petitioner alone; that on appeal to the Supreme Court, said judgment was affirmed at the January Term, A. D. 1853, thereof, and that there is now an execution in the hands of the Sheriff of Victoria county, who has levied the same upon the property of your petitioner, and will proceed to sell the same unless restrained by judicial process.

Your petitioner further represents that upon the trial of said cause, at the Fall Term, A. D. 1851, the only witnesses who testified on behalf of the plaintiff as to material facts, were Bartilo Esparsa and another Mexican whose name is not now recollected by your petitioner. Said witnesses testified that they were present at the time of the alleged trespass, and that they witnessed the same; that great force and violence were made use of by your petitioner, and that the plaintiff in said suit and his wife, were violently assaulted and abused. Your petitioner further represents that on said trial no other witnesses testified to the same facts, and that the verdict of the jury was found mainly upon said testimony. Your petitioner further represents that he was surprised by the introduction of said witnesses and the character of their testimony; that said

witnesses are utterly unworthy of credit, and that had he been apprised that they would be offered as witnesses he would have been prepared to impeach their testimony. Your petitioner further represents that he has learned since the trial of said cause, and since the rendition of the judgment in the Supreme Court, to wit: in the month of May last, that he could prove by H. Harper and George F. Harper, who now reside in the county of Lavaca, that he was not guilty of any of the alleged trespasses as complained of in said suit, and that the testimony of the aforesaid witnesses was in every particular false. Your petitioner further avers and charges that had he been able to produce said testimony upon the trial of the cause, the verdict of the jury and judgment of the Court would have been in his favor. Your petitioner avers that said judgment is unjust and oppressive, against good conscience and equity, being founded upon the testimony of witnesses that have made false and fraudulent proof. (Without signature.)

Then followed two affidavits by Henry Harper and Geo. F. Harper respectively " that I have examined the annexed petition of W. M. Cook for an injunction, and that the statements therein as to what I know and will swear to, I find " to be correct."

Then followed the bond, injunction, &c. The defendant excepted to the petition,

1st. That the Sheriff should have been made a party.

2nd. That the petition does not state that this respondent or the Sheriff knew that plaintiff had an agent residing in Victoria county, or that said agent was authorized to point out property to be levied upon legally; nor does it state that either the Sheriff or respondent knew that he had personal property sufficient to satisfy said execution.

3rd. Said petition does not show the absence or sickness of the presiding Judge, or a vacancy in the office. And for further answer, defendant admitted the judgment, execution and levy as alleged, but alleged that the lands levied on were claimed by Cook by virtue of locations, and " that there are

" other claimants to the said land, under Mexican colonist " titles, and that only enough of said land would have been " sold, to pay said debt, as your respondent presumes ; that " your respondent did not know of any property which said " Cook owned in the county of Victoria, other than his claim " to said lands, or that the said Cook had any agent in the " said county of Victoria, and he presumes that said Sheriff " was likewise ignorant of said facts, if they are true." Defendant further averred his disbelief that Beaumont had any such authority as would have authorized him to point out property, or that Cook had sufficient personal property in said county to satisfy said execution. Prayer that " the said bill of injunction be dismissed and dissolved," &c. Sworn to by defendant.

Motion to dissolve the injunction, for want of equity, and because the material facts were denied on oath by defendant. Same day motion by defendant " to exclude from the papers " in this case, all that part of the paper filed as the original " petition, which does not precede the mandate of Judge Baylor, to wit: all that part of the petition on the 2nd and 3rd " pages of said paper, because the same is immaterial, was no " part of the original petition upon which the mandate of the " said Judge was granted, and therefore is no part of the " pleadings in this case."

Same day amendment of petition filed, praying, " that the " matters and things set forth in the original petition in the " above cause, may be regarded as cause for a bill of review " of the judgment and proceedings therein mentioned, and " that said judgment and proceedings in said original petition " be reviewed, and that said judgment be vacated," &c.

Next day following entry: " Comes the plaintiff by attorney and asked leave of the Court to file an amended petition " praying that the matters " &c. ; (same amendment filed on the day before) and the Court having considered the same and being sufficiently advised thereupon, refused to permit said amended petition to be filed or to grant the prayer thereof.

Cook v. de la Garza.

And now come the parties by attorney, and by consent of parties, the defendant, by attorney, moved the Court to exclude, &c.; (same motion filed the day before;) and the Court having duly considered said motion, overruled the same. The said attorney for defendant, also by consent of parties, then moved the Court to dissolve injuntion, &c.; (same motion filed the day before;) and the Court having considered thereof, sustained said motion. Wherefore, &c.; dissolving the injunction, dismissing the petition, and rendering judgment against the plaintiff and his sureties for the amount enjoined and ten per cent. damages thereon, and costs.

Next day affidavits for change of venue were filed on behalf of the plaintiffs; six days afterwards motion for change of venue; same day leave granted to the plaintiff to amend; same day amended petition filed, stating substantially the same facts alleged in the *addendum* to the original petition; not sworn to. Next day motion for change of venue overruled. Then followed the petition for a writ of error, &c.

It was assigned for error,

1st. The Court erred in dissolving the injunction upon the motion in this case.

2nd. The Court erred in striking out the plaintiff's amended petition upon motion of defendant.

3rd. In dismissing plaintiff's petition the Court erred.

*A. S. Cunningham,* for appellee, suggested delay.

WHEELER, J. There is in the petition no averment that it was known to the plaintiff in execution, or to the Sheriff, that the defendant in execution (now plaintiff,) whose residence is alleged in another county, had an agent, or personal property in the county, on which the execution might have been levied. The Sheriff was not required to call upon the defendant to exercise his privilege of pointing out property, unless he was within the county; nor to apply to his agent unless it was

known to him that the defendant had an agent there duly authorized for that purpose.   An excessive levy upon real property, especially where the defendant in execution does not show that he has offered and is ready to place in the hands of the officer, personal property sufficient to satisfy the execution, is not a ground for granting an injunction.

The petition manifestly disclosed no sufficient ground for an injunction ; or for a reviw, or re-trial of the case.   The judgment is affirmed.

### PETITION FOR REHEARING.

In this case the undersigned counsel for the appellant feels obliged respectfully to ask for a reconsideration of the judgment pronounced by the Hon. Court, not alone because of his necessary absence, but because in his opinion, upon a full review of the record and the points involved, a re-hearing cannot be denied without a departure from some of the doctrines established by a series of decisions in this Court, and from principle equally tenable upon authorities which he proposes to cite.

The facts of the case are briefly these : (substantial statement of the original petition, except) It was further charged that the plaintiff owned a large amount of personal property in Victoria county, consisting of horses, mares and mules, &c., of the value of twelve hundred dollars, and that said property, at the date of the judgment and levy, and at the time of said levy, had been in the possession of his known and established agent, William Beaumont, on the said lands in said county of Victoria, and was subject to said execution.

Appended to the same petition, as an additional statement to precede the prayer, is a charge which goes behind the judgment, viz: (substantial statement of the *addendum.*)

On the 7th September, 1853, the defendant, de la Garza, filed his demurrer and answer, both of which only called in question the legal sufficiency of that part of the petition which

related to the levy; but which answer in fact did not, and could not deny any material charge.

On the same day the defendant filed his motion to dissolve the injunction, and also his motion to exclude from the papers in the cause the interlineations about the charge of perjury.

This latter motion the Court refused doubtless because it appeared that the amendment was interlined before the *fiat*, and was included in the affidavit for the injunction. The sustaining affidavits of the Harpers were also before the Judge in chambers, and were retained as part of the original petition, thus establishing that the charge of perjury was not groundless; for they swear that the allegations as to the witnesses were true.

It may be remarked that this amendment was inserted upon the suggestion of Judge Baylor, by Mr. Sayles before the injunction was granted.

On the same day the plaintiff filed his amended petition, adding the prayer for review, and that the judgment so obtained be vacated, annulled, and set aside, for all the reasons set forth in the original petition, thus in fact adopting the amendment and affidavits which were a little awkwardly in the original petition.

Upon this state of case the Court overruled the motion to strike out any part of the original petition, dissolved the injunction and dismissed the bill and rendered a judgment for $762 against the plaintiff and his securities on the injunction bond.

The Judge delivering the opinion stated no premises for his conclusions. It is simply asserted as a legal axiom that "The Sheriff is not required to call upon the defendant to exercise his privilege of pointing out property, unless he was "within the county; nor to apply to his agent, unless it was "known to him that the defendant had an agent there, duly "authorized for that purpose."

Is this proposition deducible from the statutes? The 4th. Section of the Act of the 27th of February, 1842, (Hart. Dig.

Art. 1327,) declares that the defendant, or his agent or attorney, in all cases shall have the right to designate the property to be levied on; provided said property shall be in the county where judgment shall have been rendered; or to which execution may be issued; and if the defendant, his agent or attorney, shall fail or refuse to designate the same, it being his own property, then the levy shall be made; first, on personal or moveable property, then on uncultivated lands, then on slaves, and lastly on the improved lands or homestead of the defendant.

Thus we see the statute gives the privilege to the defendant to point out property, provided said property shall be in the county when judgment shall have been rendered, but the conclusion of the Court creates an exception " provided the defendant be in the county." The defendant is thus converted into or substituted for the property. Again, the privilege is given to the " defendant, his agent or attorney."

The conclusion of the Judge engrafts upon the plain letter of the law the condition that it must be " known to the Sheriff " that the defendant had an agent there duly authorized for " that purpose." This is converting the wife, the Clerk, the overseer, or the attorney of record in the very cause into " an agent there duly authorized for that purpose ;" that is, duly authorized to point out property. Thus denying to a defendant the protection which the ordinary relations of life throw around him ; and making the privilege depend, not upon the fact of an agent for the transaction of his business, but upon the knowledge of the Sheriff of a special power which rarely exists. It would only remain for an oppressive Sheriff to ignore the knowledge of the presence of the defendant in the county to defeat the whole object of the statute ; and although there were three defendants, two of whom must have been within the county, yet the absence of one is enough to defeat the statute. A conclusion so hastily drawn can form no rule for defeating a plain statute.

If a rehearing be granted I pledge myself to show authori-

ties (construing similar statutes) which deny this exception, thus engrafted upon a plain statute; and that notice to the defendant, or his attorney of record, is as necessary where the defendant is out of the county as where he is in it.

If such a departure from the statute is to be established, it should at least be upon full discussion, and such reasons should be given by the Court as would enable the Legislature to provide a remedy against an oppressive mischief.

There is the more reason for this if the next conclusion be sound; and that is, that an excessive levy is no ground for an injunction. The rule when qualified by the notion of the levy being upon real estate, and that the defendant must show that he has offered sufficient personal property, is still fraught with great danger. An excessive levy either upon real or personal estate might be productive of ruin. It has always been good cause for injunction, and more especially has it become so, since the constant enlargement of the doctrines of preventive justice to every threatened abuse.

I pass now to the last conclusion in the opinion, and one, perhaps, of far the greatest importance. And with the greatest deference I would premise, that should the Reporter give the entire history of the case, no one will so much regret its brevity as the Justice who delivered it—a Justice whose pride for the Court is only exceeded by his anxious desire to render that justice which constantly and ardently desires to render to every man that which is his own. The conclusion of which the defendant complains is in these words: "The petition "manifestly disclosed no sufficient grounds for an injunction "or retrial of the case." Now this Court has held in Ziller v. McKeon, (9 Tex. R.) and the cases there cited, in Edwards and James at the late Term, Austin, and in another original case at the same Term, (names not recollected, but in which the point was directly adjudicated,) and in a case here on Monday morning, that there are cases in which an original suit may be maintained for a new trial; and I understand the general rule to be that such a suit will be entertained in all

cases where a bill of equity would lie against a Common Law judgment. (Goss v. McClaran, 8 Tex. R.; Duchess of Kingston's case, Smith's Leading Cases and Notes.)

The rule ever since the Duchess of Kingston's case has been, that fraud has been a good ground for annulling the most solemn judgments. This principle has been sanctioned by this Court, and the Supreme Court of the United States, in the fraudulent land certificate cases, and in many other cases. Now I would respectfully ask if there can be a case of fraud more strongly charged and supported, than a bill which sets out the very perjury which was sworn to in a trial, and which charge of perjury is supported by the witnesses, who were present and who sustain the petition? Witnesses who will disprove the circumstances which excited the virtuous indignation of this Court in the opinion in the 9th volume? If for no other reason, the appellant (who is a peaceable gentleman) should be allowed a new trial in order that, before this tribunal, he may remove the censure which that opinion implies. He has no other means of vindicating his character.

Surely the Court has overlooked the fact that perjury in obtaining the judgment was charged. He or I cannot believe it was intended to enunciate the doctrine that it is not a ground for an injunction or a bill of review or new trial, that the verdict was obtained by willful and corrupt perjury. No such jeopardy to life, liberty and property could ever be intended by this Court. If it be, then I pledge myself to find in almost every book in every library a contrary doctrine. (See the Duchess of Kingston's case; Story's definition of fraud, Eq. Ju. and see the authorities collected in 2nd U. S. Dig. Tit. JUDGMENT, WHEN RELIEVED AGAINST, p. 195.)

And even should it be held that the injunction was rightly dissolved, it is hard to see upon what grounds the bill was dismissed.

To render judgment against the principal and securities for more than the damages was error. (Payne v. London, 1 Bibb, 518.)

The Court assessed the utmost damages allowed by the statute. But did this necessarily dispose of the cause? The statute does not say so, and in some provisions it seems to negative the idea. Thus in the 155th Section—only contemplates an interlocutory order or decree according to the circumstances of the case.

And the provision of the 156th Section leaves certainly no absolute discretion with the Judge about continuing the petition over for trial as an original petition, but only prescribes that if it be so done the defendant shall give security, &c. If there be a discretion I think it with the complainant. But if in this I be mistaken, certainly the discretion is only a legal discretion, and can only be exercised, when, after the dissolving of the injunction there remains nothing to be tried, that is, no fact. Otherwise how could the constitutional right to a trial by jury be secured ?

I know that the foregoing views are in accordance with the universal practice in the District Courts, and that they can be sustained upon principle.

I had believed Mr. Ballinger was on the other side of this case, and had supposed that with my other business, it had been delayed until the 15th inst. by consent. My client had understood that time would be given for my brief.

After the long delays which I have often endured because of the want of readiness of others, I trust that I do not ask too much when I ask for a rehearing in a cause which has been decided without argument, and I believe the reflection which the importance of the subject demands. The Court may be assured that there was no intentional delay on our side.

Most respectfully submitted.

GEO. W. PASCHAL.


WHEELER, J. Our attention has been invited to our opinion recently delivered in this case, by an argument asking a rehearing. The case was submitted at an early day of the Term by the appellee, upon a brief calling our attention to the man-

ifest insufficiency of the petition for an injunction, suggesting delay and insisting on an affirmance of judgment with damages for the delay. A postponement of the decision was asked by the appellant on account of the absence of his attorney, and he was informed that a brief would be received on his part if furnished before the case was disposed of by the Court. After ample time had been afforded, the record was examined, and the appeal appearing to be so wholly devoid of merits as that we did not suppose his attorney would desire to be heard to argue in support of it, we disposed of the case, briefly indicating the grounds of our judgment. The suggestion of delay was not entertained, only for the reason that the judgment enjoined had not been recovered upon a money demand; and though there appeared sufficient indications that the writ of error had been prosecuted for delay, we did not think proper to give further damages in the case.

In disposing of the application for a rehearing, as the grounds of our judgment, and the application of the law to the case, and the record itself, to some extent, appears to have been misconceived by counsel, it is deemed proper to express more fully the grounds of the judgment rendered in the case, in reference to the argument for a rehearing.

The paper in the record, appearing to be an unfinished petition for a review and new trial of the original cause, but neither having any proper address, nor being signed by the party nor by any attorney, was not deemed to require especial notice. In reference to the rulings respecting it in the Court below, it was looked to in connection with the original petition; but was deemed so manifestly insufficient as not to require other notice than the simple enunciation of the obvious proposition that it disclosed no sufficient ground for a review, or retrial of the original cause. It was not verified by the affidavit of the party; or even authenticated by his signature, or that of his attorney. Appended to it were the affidavits of two witnesses to the effect that its statements as to what they "knew and would swear to" they found to be correct; and this could only

have reference to the broad and sweeping assertion that the defendant in the former suit "was not guilty of any of the alleged trespasses as complained of in the said suit; and that the testimony of the aforesaid witness was in every particular false." The credit to which so unreserved a statement under oath, and especially by persons who were not present at the trial and did not hear the witnesses testify, whose testimony they undertake to say was, "in every particular," false, it is not necessary to discuss. If entitled to any credit, they did not give authenticity or verity to the other averments of the petition, of which they did not profess a knowledge. But however authenticated, it is evident the petition was insufficient. Nothing is better settled or can be clearer on principle, than that, to entitle a party to a new trial after the Term, he must show sufficient matter to have entitled him to a new trial if applied for at the Term, and a sufficient legal excuse for not having then made his application. If the defendant was surprised by the testimony of the witnesses on the former trial, he of course, knew it; if these witnesses, whose affidavits he has obtained, were witnesses of the transactions deposed by the witnesses at that trial, he must have known it; for it is not pretended that he was not present, whether guilty of the trespasses deposed to or not. Is he to be heard now to allege as a ground for granting a new trial, or as an excuse for not having sooner made his application, that he did not know of the materiality of the testimony of these witnesses, or what facts he could prove by them, until since the judgement in that case was affirmed in this Court? He, of course, must have known of their materiality at the time of the former trial. They appear to be the same persons who were sued and jointly implicated with him in the trespasses complained of in that suit; and the Court might very properly have looked to the record in that suit, upon this application for a review. In view of the facts, the complainant might well decline to verify, or even to authenticate, the petition by signing it. By whose agency it was gotten up and brought into the record, with

the affidavits appended to it, does not very distinctly appear. And as it is not material, we spare ourselves that inquiry; or comment upon such a state of case, as, considered in reference to the record in the case sought to be reviewed, it presented. It may suffice to say that, if the petition had been signed and properly verified, and both petitions were considered together as constituting one pleading, it was manifestly insufficient, for the obvious reason that it disclosed no diligence on the part of the petitioner; and no excuse or pretence of an excuse for the want of it. As to that which a party might have known by the use of proper diligence, he is held to the same legal responsibility in all respects, as if he actually knew. And he will not be heard to allege his ignorance of the facts; for it was his own fault that he did not know, what, as a vigilant suitor, or with ordinary diligence, he might have known. It cannot be pretended that the materiality of the testimony of these witnesses, whose affidavits have been procured, if it was not known, might not have been known by the use of ordinary diligence.

In respect to the injunction; in our former opinion we adverted to the fact, that the residence of the defendant was alleged to be in a different county from that in which the judgment was rendered, and into which the execution issued; and that there was no averment in the petition that the defendant had an agent or personal property in the county, within the knowledge of the plaintiff in execution, or the officer charged with the execution of the process; and concluded that the officer was not required to call on the defendant to exercise his privilege of pointing out property, unless the defendant was within the county; or to apply to his agent for that purpose, unless it was known to the officer that the defendant had such agent in the county. We might have added, if the annunciation of so evident a truth had been deemed necessary, that if the defendant was within the county he should have so alleged, having stated his residence to be elsewhere. And if it were not, that the opinion of the Court is to be understood

in reference to the facts of the case, we might have thought it necessary to express with more precision the idea intended to be conveyed, that the officer could not be required to call upon the defendant's agent to exercise the privilege of pointing out property for him, unless the fact that he had such agent in the county was known, or, which is the same in effect, might have been known by the use of proper diligence on the part of the officer. And we might have added, that if such was the fact it should have been averred ; for that the Court cannot supply the want of a material averment by intendment in such a case. But the question as to the officer's knowledge of the character of the agent's authority was not under consideration ; but only the question whether the presence of the agent was known ; and it was sufficient to dispose of the question that it was not averred in the petition that the defendant had any known agent in the county ; or that he had personal property within it, which was known, or might have been known to the officer by the use of proper diligence on his part.

But it is stated in the application for a rehearing that the petition alleged that the defendant had personal property " in the possession of his known and established agent, William Beaumont, on the said lands in said county." Had due attention been paid to the record, this statement would have been omitted, unless it was meant to assert, that the stating that the defendant had an agent in the county, naming him, was equivalent to stating that he had a " known and established agent " there ; and that the stating that he had personal property in the possession of his agent in the county, is equivalent to stating that the property was in the possession of such known and established agent " on the said land ;" propositions which would not require an answer.

The simple proposition which, it must be apparent enough from the case before us, the opinion maintains and which seems too evident to require elaboration, is, that it is not necessary for a Sheriff in whose hands an execution is placed to levy on property of a defendant whose residence is in another

county, to go out of his county to seek the defendant to afford him the opportunity of pointing out property, or to ascertain whether he have an agent or personal property in the county subject to execution, before he will be authorized to levy on the lands of the defendant in the county. And we apprehend there is not anything so unreasonable or alarming in this proposition as to require legislative interposition.

Cases are supposed in which it would be proper for the Sheriff to call upon the wife, overseer, clerk, &c., of the defendant to exercise the right of pointing out property; and there may be such cases. But the petition before us does not present such a case. The injunction was improvidently granted ; and it was rightly dissolved on motion, and the petition dismissed for the want of merits.

The assignment of errors did not question the regularity of the judgment; and being apparently regular it was affirmed. But it is now objected that it was irregular to give judgment against the principal and sureties in the injunction bond for the principal sum enjoined. The judgment, in this respect, was in accordance with what we understood to be the plain meaning and universally received construction of the law, as administered in the every day practice of the Courts. On the dissolution of an injunction, the statute (Hart. Dig. Art. 1603) provides that " the Court shall enter an interlocutory judg- " ment, or a decree according to the circumstances of the case, " including the damages assessed as aforesaid, against the prin- " cipal and sureties in the injunction bond, and may award ex- " ecution," &c. The plain meaning of this is, that the Court shall enter judgment against the principal and sureties in the injunction bond for the principal sum enjoined, (which it is provided in the 153d section the bond shall be given to secure) " including the damages assessed as aforesaid," (that is, as provided in the preceding section, 154.) It surely was not contemplated that there should be two judgments against the sureties in the bond, one rendered by the Court for damages for delay, upon the dissolution of the injunction, and another

for the principal sum enjoined to be recovered in a new suit to be brought upon the bond. No such anomalous remedy could have been intended; and to give the statute that interpretation, would be to disregard the plain sense and meaning of the provision. " The Court shall enter an interlocutory judgment, or a decree," (that is, an interlocutory or a final decree or judgment " according to the circumstances of the case.") A judgment for what? Why, for the principal sum enjoined, of course; "including the damages assessed," &c.; not a judgment for the damages simply; but a judgment " including " the damages. And the judgment which shall "include" the damages, must, of course, be for something else besides the damages. That something else must be the principal sum enjoined. Nothing can be more perfectly clear than that this is the plain meaning of the provision; and such has been its received construction.

In fine, the only matter of doubt is, whether, considering that the appeal is wholly devoid of merits, presenting no substantial ground for calling upon this Court to revise the judgment of the District Court, and that the disposition of the case, upon the submission of it by the appellee suggesting delay at the last Term, was prevented by the appellant, by what turns out to be a groundless application for a *certiorari* to perfect the record, when it was not in reality, but only apparently imperfect by reason of the unfinished petition it contained, we ought not to have awarded the damages claimed for the delay upon the affirmance of the judgment. That question, however, we shall not now reconsider; but shall suffer the judgment to remain as heretofore rendered.

Judgment affirmed.