### J. K. BORDAGES v. WILLIAM AND MARY HIGGINS.

### No. 229.

**1. Sidewalk Assessments—Liability of Homestead.**—The city of Beaumont, under the authority of articles 375 and 376, Revised Statutes, passed an ordinance providing that the cost of constructing any sidewalk in the city should be defrayed by the owner of the abutting lot, and gave him the right to make it; but if he failed to do so, the city should construct it and assess the cost thereof against such abutting owner, and such assessment should become a lien for the amount thereof against the property of such owner, and might be enforced in any court having jurisdiction, by suit and foreclosure. Such a suit (in all respects regular) having been brought and judgment of foreclosure had, and sale of appellees' homestead made thereunder for the sum of $27.50, *held:* It is no longer an open question in this State that local assessments for pavements or sidewalks, when imposed by a city according to law upon the abutting property, are special taxes, for which the homestead may be subject to forced sale.

**2. Conclusiveness of Judgment—Collateral Attack.**—The judgment of the District Court foreclosing the lien in the original suit between the

city and the property holder, though by default, precludes any inquiry into the validity of the assessment lien in a collateral proceeding.

3. **Same.**—The ordinance provided that the sidewalk might be constructed of brick, stone, wood, or such other material as might be designated by the street committee, who were composed of three aldermen to be appointed by the mayor. This is claimed to be a delegation by the common council of a part of its legislative power, and there are authorities to support this position, but the judgment of the District Court is conclusive of this question, and of all others of like character which might have been invoked against the original judgment.

4. **Res Adjudicata.**—We are aware of no well considered opinion where the court has acquired jurisdiction of the subject matter of the suit and of the person of the defendant, in which it has been held that the judgment rendered was subject to collateral attack for errors of law apparent upon the face of the record. Such erroneous decision is just as final and binding as would be its erroneous decision on a question of fact.

5. **Jurisdiction.**—The rule which provides, that error in the exercise of jurisdiction, after it has been properly obtained over the person of the litigant and the subject matter of the suit, can not make the judgment rendered void, applies to actions to recover delinquent taxes, as in other cases, in respect to collateral attacks. It can not be shown, to avoid the effect of such judgments, that the taxes were previously paid or the assessment illegal and void.

6. **Jurisdiction of the District Court.**—Where a special tribunal is created or a special jurisdiction conferred upon a court to enforce the collection of taxes, a judgment by default for taxes is not conclusive on the landowner; but the District Court does not exercise a special or limited jurisdiction in enforcing a lien upon land for taxes, but its power to do so is derived directly from the Constitution.

7. **Foreclosure Sale—Inadequacy of Price.**—The lot was worth $1000 and sold for $27.50. There is no doubt that the price paid was grossly inadequate, but that alone will not vitiate the sale, even with an excessive levy (had there been one) added.

8. **Levy not Excessive.**—The lot was 80 feet wide, the improvements occupied only 16 feet front, and on each side thereof there was a strip of land 32 feet wide. Although a levy on one of these strips would have been sufficient to satisfy the money judgment rendered, both the judgment and the venditioni exponas directed the sale of the entire lot, and the sheriff had no discretion in the matter of the levy.

9. **Homestead Law — Suggested Amendment.** — The power given cities to levy on a homestead for local improvements should be withdrawn, and improvement of streets provided for by ad valorem taxation.

ON MOTION BY APPELLANT TO REFORM AND RENDER.

10. **Sidewalk Improvements.**—Article 475, Revised Statutes, provides how the estimate of the cost of such improvements shall be made, and declares that the amount imposed shall be levied and assessed as taxes, and shall be a lien upon the property until the payment of the same. These grants of power must be strictly construed, and the statute closely followed.

11. **Collection of Tax, How Enforced.**—Article 474 of the Revised Statutes requires that the tax shall be collected in not less than five annual payments. Article 476, Revised Statutes, provides that the levy shall be on *so much* property as will be sufficient to pay the same, and like notice of sale as in sales for other taxes shall be given, and sale shall be subject to the same conditions pro-

vided by ordinance for other tax sales. One of the important rights here secured to the owner is a sale of the smallest portion of ground that any person will take, and pay the taxes,

**12. Authority to Sue.**—Article 477 authorizes suit as an additional remedy, and requires the city council to provide by ordinance for carrying out and executing the powers conferred, but does not give the council power to pass an ordinance in conflict with or enlarging or limiting the provisions of the statute, but only in harmony with and strict subordination to them.

**13. Same—Construction of Statutes.**—Article 477, Revised Statutes, only authorizes a personal suit and moneyed judgment against the owner for the amount due. It does not authorize a suit against the property, nor one against the owner and the property together. A lien is given by statute, but the manner of its enforcement is provided. Suit may only be brought against the owner for the "amount due."

**14. Same.**—The Legislature having provided two modes of procedure, each complete within itself, one exclusively against the property and the other exclusively against the person, the law should be interpreted and enforced as written.

**15. Jurisdiction of the District Court.**—The suit which is the basis of the sale of appellees' homestead was a suit to enforce the lien, and not for a personal judgment. The tax of $20 was a lien by statute; but the Legislature not having given a suit for its enforcement, but having provided another remedy, the District Court was without jurisdiction.

**16. Want of Jurisdiction Apparent of Record.**—When the record fails to disclose a want of jurisdiction, jurisdiction is presumed as against a collateral attack, but such presumption is not indulged against proof; and the record (in the judgment foreclosing the tax lien) upon its face disclosing the want of jurisdiction, the judgment was void and must be pronounced a nullity whenever brought in question, whether in a direct or collateral proceeding.

**17. Legislative Intent.**—Distinctions between proceedings to enforce the lien and suit for the debt are so apparent, and their different effect upon property owners so important, that it can not be presumed that the Legislature intended the remedies to be intermingled.

**18. Invalid Tax Ordinance.**—The ordinance of the city of Beaumont giving power to any court of competent jurisdiction to entertain a suit to foreclose the tax lien, was enacted without authority and is inconsistent with the statute.

ON MOTION FOR REHEARING.

**19. Construction of Statutes.**—Article 376, Revised Statutes, defines the powers of the city council with reference to sidewalks, and makes the assessment a lien upon the abutting property, and authorizes collection by a sale of the lot in such manner as the city council by ordinance may provide. The passage of the ordinance by the city of Beaumont, under which the suit to foreclose the tax lien was instituted, was authorized by this section. Articles 474, 475, 476, 477, Revised Statutes, relate to avenues, streets, and alleys exclusively, and examination of articles 375 and 376 in connection with those relating to avenues, streets, and alleys, will show that they are treated as separate and distinct. Article 376 is a special and independent provision relating to sidewalks, and is not in any manner controlled by articles 474, 475, 476, and 477, nor is the manner of sale controlled by article 446.

20. **Homestead Subject to Sale.**—The fact that the lot was the homestead of Higgins and wife would not defeat the lien of the assessment, nor prevent its being sold in satisfaction thereof.

21. **Practice.**—In view of the gross inadequacy of price, and because the case went off on another ground, the first judgment of the Supreme Court is adhered to, and the case reversed and remanded.

APPEAL from Jefferson.    Tried below before Hon. W. H. FORD.
The opinions state the case.

*Douglas & Lanier* and *O'Brien & O'Brien*, for appellant.—The District Court being a court of general jurisdiction, and the judgment in cause 1180, The City of Beaumont v. William and Mary Higgins, having been rendered according to the course of the common law, after due service of citation on each of the defendants therein, its judgment is not open to a collateral attack as attempted in this case, but the same is conclusive between the parties thereto and their privies in estate.    Seguin v. Maverick, 24 Texas, 526; Nichols v. Dibrell, 61 Texas, 539; Johnson v. Templeton, 60 Texas, 238; Wilkerson v. Schoonmaker, 77 Texas, 615; Black on Judg., vol. 1, secs. 245, 246, 252; Am. and Eng. Ency. of Law, title Judgments; Freeman v. Neyland, 23 Texas, 530; Steele v. Renn, 50 Texas, 479; Lee v. Kingsbury, 13 Texas, 68; King v. Chase, 15 N. H., 13.

The court erred in holding that sidewalk assessments were unconstitutional and could not be enforced against the homestead.    Rev. Stats., art. 376; Lufkin v. Galveston, 58 Texas, 545; Roundtree v. Galveston, 42 Texas, 612; Allen v. Galveston, 51 Texas, 320; Cool. on Tax., 446, and note; Elliot on Roads and Streets, ch. 23, p. 369.

Where a sheriff's sale under an order of court is regular, mere gross inadequacy of price, even in a direct proceeding brought for that purpose, is no ground for setting aside such sale; and the facts of this case show and the judge trying same finds that the sale in question was in all things regular.    Jones v. Pratt, 77 Texas, 210.

*R. H. Leonard*, for appellees.—The lot was sold at a grossly inadequate price, which under the circumstances should render the sale void.    Cornelius v. Burford, 28 Texas, 202–208; Riddle v. Bush, 27 Texas, 675–678.

The sale of said lot 193, under and by virtue of the city ordinance No. 42 of the city of Beaumont, should be held null and void, because said ordinance is without authority of law, unconstitutional, null and void; because said ordinance shows that the city council delegated its authority to enforce said ordinance to a committee and the enforcement of the ordinance was at the option of the committee.    Cool. Const. Lim., ch. 8, secs. 204, 205; Thompson v. Schermerhorn, 6 N. Y., 92; Smith v. Morse, 2

Cal., 524; Rogers v. Collier, 43 Mo., 359; Dill. Mun. Corp., sec. 60; Oakland v. Carpentier, 13 Cal., 540; Cool. Const. Lim., 88a.

MARR, Judge.—The counsel for the appellant state the nature and result of the suit as follows:

"This suit is an action of trespass to try title, brought by appellant against appellees, by petition in the usual form, filed in the District Court of Jefferson County, May 5, 1891; the land sued for is part of lot 193, in block 39, in the city of Beaumont, in Jefferson County. The cause was tried without a jury by the District Court of Jefferson County, at its May term, 1891, and judgment rendered for appellees, William Higgins and Mary Higgins. Appellant Bordages appeals.

"Appellant claims said premises under a judgment of the District Court of Jefferson County, rendered at its November term, 1890, in cause 1180, The City of Beaumont v. William Higgins and Mary Higgins. This judgment fixed a lien on the premises in controversy, in favor of the city, for local assessments for a sidewalk constructed in front of the said premises by the city, and ordered the premises in controversy sold as under execution. The appellant was the purchaser at such sale, and this suit is for possession of the premises.

"The District Court held the judgment of the same court previously rendered open to collateral attack; that its judgment foreclosing a lien on the property for local assessments for the construction of sidewalks was void, because such local assessments were not taxes, and no other lien existed on which said judgment could be based."

The language used by the court below in its conclusions of law does not expressly justify the statement of counsel that the court held its former judgment "subject to collateral attack and void," but its decision as rendered in this case leads indubitably to the conclusion as drawn by counsel. The court found "that the judgment under which the sale of the property in controversy was made could *not* be attacked in this proceeding;" but as the court had found, as "a conclusion of fact," that the local assessments imposed by the city of Beaumont upon the property were not taxes within the meaning of the constitutional provision allowing a homestead to be sold for the taxes due thereon, the court, therefore, held in effect that the sale of the property was invalid, and gave judgment for the defendants.

How the court reached this last conclusion without overturning or ignoring the former judgment of the District Court which authorized the sale of the property as it was subsequently made, we do not comprehend.

The property in dispute is the homestead of the appellees, and has been for many years, and the local assessments or improvements were made thereupon by the city in the year 1890, at a cost of $20. The city of Beaumont is incorporated under the general laws, and in pursuance of

the authority granted to such cities by articles 375 and 376 of the Revised Statutes, in the year 1889 passed an ordinance, through its common council, regulating the construction of pavements and sidewalks in the city, and the mode and manner of making the same, as well as of fixing the liability of the owners of the abutting property. The ordinance in effect, like the statute, provided that "the cost of the construction of any sidewalk erected by the city shall be defrayed by the owner of the lot, or part of lot or block, fronting on the sidewalk;" and further, that the assessment should create a lien on the property to secure such assessments and the costs of collection, for which it might be sold; and that the lien could be foreclosed by suit in any court of competent jurisdiction in default of payment, etc.

The ordinance moreover required due notice to the owner, and gave him the right to erect the improvements as designated by the city; but if he failed to do so, then the city should construct them at his expense. In this case it appears that the appellees were duly notified to construct the sidewalk in front of their lot; but failing to do so, the city then erected the same. Upon the failure of the appellees to pay the costs of the sidewalk as erected by the city, the latter filed its suit in the District Court of the county by a petition, which seems to contain all of the essential averments to give the court jurisdiction and to authorize the foreclosure of the lien claimed by the city upon the property in that case. All of the facts and proceedings were duly alleged, and each of the appellees was duly cited by personal service, as provided by law in any ordinary civil suit, to appear and defend the action. They made default, and the District Court gave judgment against them and in favor of the city, foreclosing the lien upon the part of the lot owned by the defendants, and directed it to be sold as under execution to satisfy the amount of $20 (which the court found to be due the city), and the costs of the proceeding. A venditioni exponas issued upon the judgment, and the property in controversy was duly sold and conveyed to the appellant by the sheriff under the writ and judgment, for the sum of $27.50, which was the total amount of the assessment and the costs of court.

The appellant, among others, presents the following assignments of error:

1. "The court erred in holding that the judgment of the District Court, the order of sale, the sheriff's return thereon, in cause No. 1180, The City of Beaumont v. William and Mary Higgins, and the sheriff's deed made to plaintiff in pursuance thereof, under all of which plaintiff claimed the premises in controversy, did not vest the fee simple title of said premises in the plaintiff."

2. "The court erred in holding that sidewalk assessments were unconstitutional and could not be enforced against the homestead."

We are constrained to hold that both of these assignments are well

taken. It is no longer an open question in this State, that local assessments for pavements or sidewalks, or other improvements of a similar character, when imposed and levied by a city, according to law, upon the abutting property, are special taxes for which the homestead may be sold as other lands in the mode which may be provided by law.

The homestead may be subjected to forced sale under the Constitution for taxes due thereon, and it has been several times decided by the Supreme Court that those local assessments, if regularly laid, will create a lien upon even the homestead, of which the District Court, under the Constitution, has ample jurisdiction, and may foreclose the same. We bow to these decisions, and hold that the homestead of the appellees was not protected by the Constitution from these taxes, or assessments. Lufkin v. Galveston, 58 Texas, 549; Wood v. Galveston, 76 Texas, 126; Adams v. Fisher, 63 Texas, 654; same case, 75 Texas, 657; Allen v. Galveston, 51 Texas, 302; Roundtree v. Galveston, 42 Texas, 613. Were it otherwise, however, the judgment of the District Court foreclosing the lien in the original suit between the city and the appellees would preclude any inquiry into the validity of the assessment and lien, upon this collateral proceeding, as will be understood as we proceed.

The appellees insist that that judgment is void, because the ordinance of the city of Beaumont, which we have already outlined, was likewise void. The ordinance, among other things, provided that the sidewalks should be constructed of "brick, stone, or wood, or such other material as may be designated by the committee on bridges and streets, the committee to be composed of three aldermen, and to be appointed by the mayor." This, it is claimed, was a delegation by the common council of a part of its legislative power and control over the subject to others, and in violation of law. Perhaps this position is entirely correct, and it seems to be supported by authority. Thompson v. Schermerhorn, 6 N. Y. App., 92. Still, if the question were before us in such way that we would be required to decide it, we might hold, that after rejecting this provision of the ordinance, enough would remain to accomplish the purpose of the act, and to justify its execution. The sidewalk which was erected upon the land in dispute was constructed of wood, one of the materials specified in the ordinance. But however this may be, we must hold that the judgment of the District Court in the original suit, as already suggested, is conclusive of this question, and of all others of like character which might have been invoked against that judgment in some direct attack upon it, or as reasons why it should not have been pronounced in the first instance, had the appellees appeared and contested the original proceedings.

We are aware of no well considered case in which it has been held by any court of last resort that a judgment of a court of record and of gen-

eral jurisdiction, rendered in a controversy where the court had regularly acquired jurisdiction over the subject matter and the person of the defendant, is absolutely void or subject to collateral attack for even errors of law apparent upon the face of the record.  The erroneous decisions of the court upon questions of law are just as final and binding as would be its erroneous determinations of questions of fact arising upon the evidence.  Such judgments are, at most, only voidable in some appellate or revisory proceeding.  In this case we have discovered no fatal irregularity even in the proceedings in the original suit, as already intimated, were we called upon to review the same.

Freeman correctly states the law upon the question in hand in the following language:

"Jurisdiction being obtained over the person and over the subject matter, no error in its exercise can make the judgment void.  The authority to decide being shown, it can not be divested by being improperly or incorrectly employed.  Error of decision may be corrected, but not so as to reach those who have relied in good faith upon its correctness." (This sentence relates to direct attacks.)  "The same rules apply to actions to recover delinquent taxes as in other cases, in respect to collateral attacks.  It can not be shown, to avoid the effects of such judgments, that the taxes were previously paid.  Neither will such judgment be any the less effective because it appears from the judgment roll that the assessment was illegal and void."  Freem. on Judg., sec. 135, and authorities cited, and note 5; 1 Black on Judg., secs. 170, 247, 261; Murchison v. White, 54 Texas, 78; Boggess v. Howard, 40 Texas, 153.

A judgment by default is no exception to the general rule.  Freem., secs. 330, 532.

There are authorities to the effect that where a special tribunal is created or a special jurisdiction is conferred upon a court of record to enforce the collection of taxes, a judgment by default in such proceeding is not conclusive upon the owner of the land.  Laws cited in 1 Black on Judg., sec. 247, and Cool. on Tax., 358, 359.

But these decisions have no application to the question in hand, for the reason that the District Court in this State does not exercise a special or limited jurisdiction when it forecloses a lien upon land, but its authority to try "all suits for the enforcement of liens upon land" is derived directly from the Constitution as a part of its general jurisdiction. Const., art. 5, sec. 8.

Doubtless the popular belief, justified by experience, that scarcely any tax sale would confer a valid title to land, conduced to the small price at which the land of the appellees was struck off by the sheriff; but the sale, as we have seen, was judicial, and could scarcely be termed a "tax sale."

This brings us to the consideration of the objections made by the ap-

pellees to the sale of their homestead upon the alleged grounds of gross inadequacy of price and excessive levy by the sheriff. The part of the lot owned by the appellees (and which was ordered to be and was sold) is 80 feet wide and 60 feet long, and was worth over $1000 when sold under the judgment. Their improvements occupied only 16 feet front, and on each side thereof there was a strip of the land 32 feet in width, which was shown to have been worth several hundred dollars. It is claimed that the sheriff should have levied upon one of those "strips," which would have been greatly more than sufficient to have satisfied the judgment and costs, instead of selling the entire property. We are compelled to hold, however, that this claim is without any legal foundation. Both the judgment and the writ of venditioni exponas commanded the sheriff to seize and sell the entire portion of the lot owned by appellees, and left him no discretion in the matter.

There is no doubt that the price for which the land was sold is grossly inadequate; but that alone, without fault upon the part of the purchaser, will not vitiate the sale; nor would an excessive levy, if shown, coupled with such inadequacy of price, be sufficient to avoid the sale, unless it should further appear, as does not in this case, that such levy conduced to the insufficiency of the price. Vide Jones v. Pratt, 77 Texas, 210; Pearson v. Flanagan, 52 Texas, 266; Cook v. De la Garza, 13 Texas, 431; Atcheson v. Hutchison, 51 Texas, 223; Scott v. Solomon, 59 Texas, 593; Haskins v. Wallet, 63 Texas, 213.

We have not in the examination of this case confined ourselves to the points made by the appellees, but have diligently searched the record to discover some legal ground upon which we could affirm the judgment of the District Court, but in vain. We reverse it with great reluctance, on account of the apparent hardship that will thus be inflicted upon the appellees. They are shown to be two "old and infirm negroes" (husband and wife), who have occupied this land for a number of years as their only home and place of abode; and now it seems, from the record, that their homestead is to be taken from them for a paltry sum, and on account of petty street improvements. They may have been foolish—perhaps obstinate or ill advised; but these things, if true, which does not appear, do not lessen the asperity of the case. It is to be hoped that the almost cruel consequences of these proceedings will serve to some extent as a salutary warning, and that the next time the people utter their will upon the homestead exemption the cities of the State can then no longer levy "locals assessments" upon the homes of the people, but shall be required to provide for the improvement of "streets, alleys, and sidewalks" by ad valorem taxation, at least so far as homesteads are to be affected.

A sense of duty and the inexorable mandates of the law compel us to recommend that the judgment should be reversed and the cause remanded.

Adopted March 22, 1892.

UPON MOTION TO REFORM JUDGMENT.

HENRY, ASSOCIATE JUSTICE.—Upon report of the Commissioners of Appeals the judgment in this cause was reversed at the last Galveston Term of this court, and the cause itself was remanded for a new trial.

Before the adjournment of that term a motion was filed by the appellant to reform the judgment, and instead of reversing and remanding to reverse and render judgment for the appellant.

We have re-examined the record with the view of determining whether our disposition of the cause was correct, and we have concluded that it was not.

The cost of constructing the sidewalk adjacent to the lot owned by the appellees was $20.

Without questioning, for the purposes of this appeal, the correctness of anything that was said by Judge Marr in the opinion adopted by us, in regard to the regularity of the proceedings of the city in the construction of the improvement, so as to make the cost of it justly a debt against the lot and its owners, and in holding that its being a homestead did not prevent the lien from attaching to the lot, we are of the opinion that some other considerations of importance have been overlooked.

Article 475 of the Revised Statutes provides how the estimate of the cost of such improvements shall be made, and declares that the amount imposed shall be "levied and assessed as taxes and shall be a lien upon the property until the payment of the same."

In the case of Allen v. Galveston, 51 Texas, 318, this court said: "These grants of power to make local assessments are strictly construed and must be strictly followed."

Cooley says, in his work on Taxation, that where a right to bring suit to collect a tax is expressly given, "the statute must be closely followed, and any conditions which are named must be observed." Page 435.

Article 474 of the Revised Statutes, by virtue of which the tax now in question was imposed, directs that it shall be collected "in equal annual payments, not less than five in number." This would have required the appellees in this case to pay four dollars each year for five years.

Article 476 provides for a notice to be given of the time when the tax will become due; and if it is not paid, it provides as follows for the enforcement of the lien on the land: "Said officer or committee shall levy on *so much* of any property on said list, on which said tax has not been paid, as will be sufficient to pay the same, and the same notice of sale as is required in sales for other tax shall be given; and if said tax be not paid before the day of sale, said officer or committee shall sell said property in the name, and under the circumstances, and to the extent, and subject to the same conditions which are or may be provided by ordinance for the sale of real estate in the city charged with the payment of

taxes imposed by said corporation; and said officer or committee shall execute a deed to the purchaser at any such sale, and all the provisions of this title in reference to a deed drawn by the assessor and collector shall apply to the deed provided for in this article.''

One of the important rights here secured to the owners of the property by reference to other tax sales is, '' that when real estate is offered for sale, the smallest portion of ground (to be taken from the east side of the premises) shall be sold, for which any person will take the same and pay the taxes, and costs, and fees.'' Rev. Stats., art. 446.

The authority to bring a suit or the collection of the tax is conferred by article 477, Revised Statutes, reading as follows:

''In addition to the power and authority granted to the city council to collect said assessment of taxes as aforesaid, they shall have the further power and additional remedy of instituting suit in the corporate name, in any court having jurisdiction of the recovery, against any owner of property, for the amount due for any such work so made as aforesaid; and the city council shall provide, by resolution or ordinance, under the provisions of this title, for carrying out and executing the powers in this chapter conferred; and may adopt such resolutions, and enact such ordinances, and make such regulations as they may deem necessary.''

It is not necessary for us to say that the last clause quoted was not intended to confer upon the council power to pass ordinances in conflict with, or to enlarge or limit, the provisions of the statute.

It confers the power upon the city council to enact ordinances in harmony with the statutes, and, in strict subordination to them, to provide ways and means for applying and enforcing them.

The article (477) authorizing a personal suit and judgment is explicit and unambiguous. It only authorizes such a suit '' for the recovery against the owner of property for the amount due.''

It is a personal suit that is provided for, and a moneyed judgment only is mentioned. It does not authorize a suit against the property. It does not authorize a personal judgment against the owner of the property, together with a foreclosure of the lien upon the property.

A lien upon the property is given by the statute, but the manner of its enforcement is carefully and fully provided for.

The right to also bring a suit is not left to inference; neither as to whether one may be brought at all, nor as to what it shall include, if brought. It may be brought '' against the owner for the amount due,'' '' in any court having jurisdiction.''

We think it must be presumed, that when the Legislature expressly provided for the two modes of procedure, each one complete within itself— one providing exclusively for a remedy against the property, and the other exclusively for a personal remedy—the intent of the law was fully expressed, and that it should be interpreted and enforced as written.

The record shows on its face that the suit was brought by the city against the property to enforce the lien, and not against the owners of the property to recover a personal judgment, and that the judgment was rendered in the same way.

The District Court has a general jurisdiction to render a judgment to enforce a lien on land, without regard to the amount of the debt or the value of the land.

The tax of $20 was in this case a lien on the land, because the law made it so; and if the Legislature had given a suit for the enforcement of the lien, as well as the recovery of the debt, the jurisdiction of the District Court would have existed by the terms of the Constitution. But not when the Legislature has provided another remedy for the enforcement of the lien and has failed or refused to give a suit for that purpose.

If the record in the case in which the judgment was rendered foreclosing the lien had failed to disclose that the cause of action was one over which the court had no jurisdiction—if it had been silent in that respect—we would be required in this case (where it is brought collaterally in issue) to presume that it was rendered upon a state of facts giving jurisdiction, and it would then, as is said in Judge Marr's opinion, preclude all further inquiry.

In the case of Withers v. Patterson, 27 Texas, 496, Justice Bell clearly expresses the rule and its limitations as follows:

"If the court orders a sale of land when the circumstances do not exist which under the law authorize it do so, it acts in doing so without jurisdiction, or, in other words, without authority. These are plain propositions. The difficulties which are presented to courts arise in cases where there is a deficiency of proof as to the circumstances under which the court acted in ordering the sale.

"The question in such cases is, how far is proof (which is wanting) to be supplied by presumption? In the absence of proof there undoubtedly always arises a presumption that a court of general jurisdiction has acted, in doing a thing which it has power under certain circumstances to do, within the limits of its authority. The presumption is that the court has done what it was right to do, and not that it has done a wrong. The circumstances which would have authorized the court to act as it did act are presumed to have existed. But presumptions are indulged in the absence of proof, and not against proof."

As the record in the suit brought by the city of Jefferson to enforce the tax lien discloses on its face the want of jurisdiction in the court, the judgment rendered was void, and it must be treated as a nullity whenever it is brought in question, whether it be in a direct or a collateral proceeding.

The distinctions between the proceeding to enforce the lien against the property and the suit for the debt are so apparent, and their different effects upon the rights of the property owner generally, and especially in the

instance now under consideration, are so important as not to admit of the conclusion that the Legislature intended that they should be intermingled, instead of each being pursued as an independent or distinct remedy.

The sum adjudged against the property was $20. The costs of court and for making the sale amounted to $14.05.

The judgment was rendered on the 24th day of November, 1890.

The sheriff sold the entire lot on the 7th day of April, 1891.

After the judgment, and before the sale, the property owners paid to the attorney of the city on the tax the sum of $6.

The property brought at the sheriff's sale $35.

The lot measured 60 by 80 feet. The evidence of the market value of the lot ranged from $800 to $1600. It had on it the residence of the owners, on each side of which there were strips of land each about 30 feet wide, each one of which, the owner testified, was worth $600, and that he had been offered that price for one of them.

The result of the suit, if allowed to have effect, would be to compel the owner to pay the entire tax, with costs, in less than one year, and to have his whole property sacrificed in a body at a sale to collect a tax; whereas, if the property had been proceeded against under protection of the statute, it could only have been for $4, if nothing had been paid; and even if sold for the whole debt, it seems reasonable to conclude that less than the whole lot might have been found sufficient.

When the result of disregarding a compliance with the specific terms of the remedies given by the statute may lead to such important differences, we do not think that the courts can treat the distinctions made by the Legislature as immaterial, nor permit the two remedies to be intermingled.

It appears that the city council had passed an ordinance on the subject of this tax, which, among other things, provided as follows:

"The cost of the construction of said sidewalk shall be a lien in favor of the city for the amount thereof on the property of such owner, and said lien shall exist in favor of the city for such costs, and shall be by the city enforced in any court having jurisdiction of the subject matter of a suit brought for the purpose, and said property sold according to law to pay the cost of such construction, besides the costs of suit."

The language of this ordinance clearly embraces the jurisdiction that was attempted to be exercised by the District Court, and if the city council had been invested with the power to annul or amend an act of the Legislature, it would support the judgment in this case. But, as we have said, the city council had no authority to enact an ordinance inconsistent with the statute.

The motion will be granted, insomuch as it seeks to set aside the judgment heretofore rendered by this court, and the judgment of the District Court will be affirmed.

Delivered June 24, 1892.

### ON MOTION FOR REHEARING.

GARRETT, Chief Justice.—The motion for rehearing in this case was transferred to this court by the Supreme Court, the same having been filed after the adjournment of the last term of that court at Austin.

The appeal was from the judgment of the District Court of Jefferson County in favor of the appellees, who were defendants below, in a suit of trespass to try title to a lot of land in the city of Beaumont.

At the late Galvestom Term of the Supreme Court, on report of the Commission of Appeals in an opinion by Judge Marr, the judgment of the court below was reversed and the cause remanded. Counsel for appellant filed a motion to reform the judgment, and instead of reversing and remanding to reverse and render for the appellant.

In an opinion by Judge Henry on the motion to reform, the former judgment of the Supreme Court was set aside and the judgment of the court below was affirmed; and the case is now before us on a motion for rehearing.

After a careful examination of the record we are of the opinion that a rehearing should be granted.

Appellant's title to the lot in controversy is based on a judgment of the District Court of Jefferson County, at the suit of the city of Beaumont, establishing a lien on the lot for the cost of the construction of a sidewalk, and an order of sale issued on said judgment, and a sale of the lot by virtue of said order of sale. The question for our determination is, did the District Court have jurisdiction to render the judgment?

Article 376 of the Revised Statutes defines the powers of the city council with reference to the construction of sidewalks. It is as follows:

"Article 376. To establish, erect, construct, regulate, and keep in repair bridges, culverts and sewers, sidewalks and crossings, and to regulate the construction and use of the same, and to abate and punish any obstruction or encroachments thereon; and the cost of the construction of sidewalks shall be defrayed by the owner of the lot or part of the lot or block fronting on the sidewalk; and the cost of any sidewalk constructed by the city shall be collected, if necessary, by the sale of the lot or part of the lot or block on which it fronts, together with the cost of collection, in such a manner as the city council may by ordinance provide; and a sale of any lot or part of lot or block to enforce collection of costs of sidewalks shall convey a good title to the purchaser, and the balance of proceeds of sale, after paying the amount due the city and costs of sale, shall be paid by the city to the owner."

An ordinance was passed by the city council providing for the construction of sidewalks, which, among other things, provided:

"The cost of the construction of said sidewalks shall be a lien in favor of the city for the amount thereof on the property of such owner, and

said lien shall exist in favor of the city for such costs, and shall be by the city enforced in any court having jurisdiction of the subject matter of a suit brought for the purpose, and said property sold according to law to pay the cost of such construction, besides the cost of suit.''

Article 376 of the Revised Statutes made the assessment a lien upon the lot, and we think that the power conferred by it to collect the cost of construction by a sale of the lot in such manner as the city council might by ordinance provide, was sufficient to authorize the passage of the ordinance providing for the sale by process of a court of competent jurisdiction.

The conclusion reached by the Supreme Court was evidently based upon a construction of articles 474, 475, 476, and 477 of the Revised Statutes. These articles relate to avenues, streets, and alleys exclusively; and while it may be said that the sidewalk is a part of the street, still an examination of articles 375 and 376, in connection with those relating to avenues, streets, and alleys, will, as we think, conclusively show that they are treated as distinct and separate. For the construction of a sidewalk the lot may be charged with the entire cost, but it can be charged with only one-third of the cost of the paving and repair of the street.

Article 446 relates to the method of sale for taxes. It is general, but it is the method of sale provided for in article 476 by its language directing the sale in the manner "provided by ordinance for the sale of real estate in the city, charged with the payment of taxes imposed by said corporation." The method of sale, however, for the cost of the construction of a sidewalk is a special provision which will control the general provision in article 446, if, indeed, that provision should be more than the method prescribed for the collection of ad valorem taxes.

In the case of The City of Galveston v. Heard, 54 Texas, 420, the suit was by the city against Heard to recover a sidewalk assessment made under a provision of the charter of Galveston identical with article 376, and to have the property sold to satisfy the lien of the assessment. The right of the city to proceed by a suit in the District Court to establish a lien and have the property sold does not seem to have been questioned, but that is what was done by the court.

Article 376 is a special and independent provision of the charter relating to the construction of sidewalks, and it is not in any manner controlled by the articles 474, 475, 476, and 477, relating to avenues, streets, and alleys; nor is it controlled as to the manner of sale by article 446, relating to the sale of real estate for the taxes assessed thereon.

The fact that the lot was the homestead of Higgins and his wife would not defeat the lien of the assessment, nor prevent it from being sold in satisfaction thereof, even if we could now inquire into that matter after judgment against them.

Appellees pleaded in reconvention that the property sold was worth

about $2000, and that the price at which it was bid off was grossly inadequate, and asked that the sale be set aside.

In his conclusions of fact the court found that the sale was regular; but the judgment was rendered on another ground, which was the invalidity of the judgment in the suit of the city against appellees.

In view of the gross inadequacy of price, and because the case went off on another ground, we think that the first judgment of the Supreme Court, remanding the cause for another trial, was right.

The judgment of the court below will be therefore reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 27, 1892.